**18 So.2d 602**

**STATE v. BROCATO et al. (two cases).**

**No. 37372.**

May 22, 1944.

Clarence Dowling, of New Orleans, for defendants.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Asst. Atty. Gen., and J. Bernard Cocke, Dist. Atty., of New Orleans, for the State.

O'Niell, Chief Justice.

On the 20th of May 1941 a bill of information was filed against James Brocato,

better known as Jimmy Moran, and against Nunzio Mustachia, charging them with embezzlement. On the same day a bill of information was filed against James Brocato and A. H. Morganstein, charging them also with the crime of embezzlement. In the case against Brocato and Mustachia the misappropriations were alleged to have been committed on August 1, on September 30, and on November 2, 1938. In the case against Brocato and Morganstein the misappropriations were alleged to have been committed on May 16, and on June 7 and 14, 1938. In each of the bills of information the prescription of one year was negatived by the allegation that a year had not elapsed since the commission of the offense was made known to the judge, district attorney or grand jury having jurisdiction.

The defendants filed pleas of prescription of one year under article 8 of the Code of Criminal Procedure, which provides that a prosecution for any crime, excepting a few named crimes, but including the crime of embezzlement, shall be barred by prescription unless the indictment or bill of information is filed within a year after the offense shall have been made known to the judge, district attorney or grand jury having jurisdiction. The Judge of the Criminal District Court, after hearing the evidence, concluded that the commission of the offenses in this instance was made known to three assistant district attorneys, then serving as such, in the early part of October 1939. The judge therefore maintained the pleas of prescription filed by Brocato and Mustachia and ordered them discharged. The district attorney after reserving a bill of exception appealed from the ruling. Morganstein's plea of prescription was not submitted to the judge for decision.

The knowledge which the three assistant district attorneys received, concerning the commission of the offense, was brought to them by an attorney at law named Mathew Braniff, who is now and was at the time of the trial of these pleas serving somewhere overseas, in the World War, as a member of the R. A. F., and therefore was not available as a witness.

Brocato was an agent of the Department of Conservation and the charges against him and the two other defendants were that they had embezzled checks and funds belonging to the department. In the bill of information in which Brocato and Mustachia were charged jointly they were charged specifically with cashing pay-roll checks alleged to have been issued by the Department of Conservation and made payable to persons who performed no service for the department and whose signatures were alleged to have been forged by Brocato in the endorsement and cashing of the checks. Mustachia and Brocato were charged with aiding and abetting each other in cashing the checks and embezzling the proceeds.

In the bill of information against Brocato and Morganstein, Brocato was accused of purchasing, as an agent of the Department of Conservation, from a drug store owned and operated by the firm of Katz & Besthoff, certain toilet articles and perfumes for his own use, with checks or vouchers issued by the department. And it was charged that Brocato and Morganstein,

who was manager of the Katz & Besthoff drug store, aided and abetted each other in the misappropriation of the checks and funds of the Department of Conservation in the purchasing of the toilet articles and perfumes for Brocato's personal use with the checks and funds belonging to the Department of Conservation.

The judge who heard the testimony and sustained the pleas of prescription has written a lengthy opinion, reviewing the testimony and giving very substantial reasons for his conclusion that the three witnesses, who were assistant district attorneys in October 1939, when Mathew Braniff informed them of the commission of the crimes of embezzlement with which the defendants are charged in this case, told the truth.

The present district attorney, who filed these bills of information, went into office on May 21, 1940, and had no knowledge of the commission of the crimes charged in the bills of information before the Supervisor of Public Funds furnished a report of an audit of the books of the Conservation Department, which was well within the year preceding the filing of the bills of information. But it was proven on the trial of the case and is conceded that each one of the three assistant district attorneys to whom Mathew Braniff conveyed the knowledge of the commission of the crimes charged in this case had authority to institute a prosecution. It is conceded therefore in the State's brief that the pleas of prescription must stand or fall upon the effect to be given to the testimony of the three assistant district attorneys, who swore that they received knowledge of the commission of the crimes from Mathew Braniff in October 1939. The district attorney contends that the testimony of the three former assistant district attorneys is not true, and that if it were true the knowledge given to them would not be such knowledge as is required by article 8 of the Code of Criminal Procedure to commence the running of the period of prescription.

■ We concur in the finding of the trial judge that the testimony of the three former assistant district attorneys is true. They are reputable lawyers and have been practicing their profession in New Orleans for periods ranging from 18 to 21 years. Two of them served as assistant district attorneys for fifteen years, under four district attorneys, and the other served for six years under two district attorneys. No evidence was offered to discredit their reputation for veracity, or to impute to them any personal interest in this prosecution, or any motive that might prompt them to bear false testimony. The reason which they give for not taking action on the knowledge which Braniff brought to them is that they did not consider the evidence sufficient to justify an investigation. One of them said that he told Braniff that an investigation would require an audit of the books of the Conservation Department, which would require "an indefinite amount of technical work"; and that Braniff then said that he was so sure of the facts concerning the commission of the crime that he would himself file an affidavit against Brocato if the assistant district attorney would accept it. But the latter refused to accept an affidavit. He testified also that,

according to the custom of the office of the district attorney, a matter as important as the complaint which Braniff brought to the office would be the subject of general discussion among the assistant district attorneys, and that the district attorney then in office "was bound to become cognizant of the matter". Another of the three assistant district attorneys testified that, when Braniff offered to file an affidavit against Brocato, Braniff gave some of the details of the crime, stating that he had seen the payrolls of the Conservation Department and that Brocato's name did not appear on the payrolls; that Brocato had deadheads on the payrolls and was receiving their checks and cashing them himself, and was buying, for his personal use and with funds of the Conservation Department, perfumes and other toilet articles from Katz & Besthoff; that the assistant district attorney then asked Braniff if he had any specific or concrete evidence that Brocato was guilty of the crimes which Braniff imputed to him and that Braniff replied that he could get the necessary proof, and that he wanted to file the affidavit in order to provoke an investigation of the matter. The witness said that he talked to Braniff particularly about the buying of the perfumes from Katz & Besthoff, and that he, the witness, could not figure out what the Conservation Department would do with perfumes at the duck club. The witness testified that at that time the books of the Conservation Department were in the hands of the department.

The three assistant district attorneys admitted that they were very friendly with Mathew Braniff, that he was a frequent visitor in the district attorney's office and was very persistent in his effort to bring charges of embezzlement against Brocato and others. And the three assistant district attorneys admitted that they had great respect for Braniff as a trustworthy and courageous young man.

In his written opinion the judge says that a telephone call on Katz & Besthoff, and a call upon or visit to the Conservation Department's duck club, at Pass a Loutre, together with an examination of the department's books, would have brought out all of the facts concerning the charges of embezzlement, of which Braniff had informed the assistant district attorneys, and would have implicated any and all parties who had conspired with or aided and abetted Brocato in the alleged embezzlements.

The auditor who afterwards furnished the information on which the present district attorney based his bills of information had no difficulty in obtaining the facts from Katz & Besthoff, and from the books of the Conservation Department, and a visit to the department's club at Pass a Loutre. Any one of the three assistant district attorneys, to whom Braniff gave what information he had, could have obtained immediately and with very little effort all of the information which the auditor afterwards obtained and furnished to the present district attorney, and which he alleges in his bills of information.

The judge refers to the fact, which is mentioned in the testimony, that, at the time when Braniff was attempting to make an affidavit against Brocato, and up to the 11th day of March 1940, the books of the

Department of Conservation were closed to the public, and had been so closed since August 28, 1939, under a temporary order of court, in a suit brought by several resident taxpayers in New Orleans. The judge refers to the suit of State ex rel. Wogan et al. v. Clements, Commissioner of Conservation, 194 La. 812, 195 So. 1. The reason for which the Judge of the Civil District Court did not allow the relators in the Wogan suit to inspect the books of the Conservation Department was that the books were then being audited by the Supervisor of Public Funds. But the testimony of a reliable witness, who held the office of district attorney at the time when Braniff was trying to file an affidavit against Brocato and others, shows that the attorney general, then serving, could have examined the books of the Department of Conservation at any time. In fact that witness testified that at that time two prominent citizens, whom he named,—one of whom was a candidate for Governor—called upon him as district attorney, at his office, and asked to be allowed to prefer charges against the Commissioner of Conservation for violation of what the witness called the public-record act, being Act No. 242 of 1912, by refusing to allow the citizens to inspect the books or records of the Conservation Department, and that he, the then district attorney, refused to accept the charges because he had just been warned and instructed by a telephone message from the first assistant attorney general, claiming to be speaking for the attorney general, not to accept such a charge against the Commissioner of Conservation, because the books of the Department of Conservation

were then in the hands of the auditor; and that he, the first assistant attorney general said: "I do not want those books disturbed until the auditors have completed their work."

There is no doubt that any one of the three assistant district attorneys, to whom Braniff gave the information which should have put them on inquiry, could have obtained with little or no trouble all of the information necessary to sustain a prosecution, if any one of them had so desired.

In two recent decisions, namely, State v. Perkins, 181 La. 997, 160 So. 789, and State v. Oliver, 196 La. 659, 199 So. 793, 797, this court interpreted the phrase "within one year after the offense shall have been made known to the judge, district attorney or Grand Jury" as meaning within one year after the judge, district attorney or grand jury shall have received such notice as should put such an official on inquiry as to whether the offense was committed, and such as should prompt a faithful prosecuting officer to institute a thorough investigation.

In State v. Perkins, 181 La. 997, at page 1002, 160 So. 789, at page 791, the court, in holding that such notice as should put a district attorney or assistant district attorney on inquiry was sufficient knowledge to commence the running of prescription under article 8 of the Code of Criminal Procedure, said: "One who intentionally remains ignorant may be chargeable in law with knowledge. And while notice is not actual knowledge, it may be such information as men usually act upon in ordi-

nary human affairs. In this sense, knowledge is such actual notice as would put one upon inquiry. See Corpus Juris, vol. 35, p. 919."

In State v. Oliver, 196 La. at pages 664 and 665, 199 So. at page 795, the court quoted extensively from the opinion in State v. Perkins, and declared: "The question before the Court is not whether the district attorney had actual knowledge of the embezzlement of the funds by the defendant and Dardeau, but whether or not he had notice or such knowledge or information of the transaction as to put him upon inquiry."

The judgment is affirmed.

ODOM, J., takes no part.