19 So.2d 185
**STATE v. SHUSHAN et al.**

No. 37484.

June 26, 1944.

Eugene Stanley, Atty. Gen., J. Bernard Cocke, Dist. Atty., of New Orleans, Fred S. LeBlanc, Atty. Gen., and Michael E. Culligan, Sr., Sp. Asst. Atty. Gen., for appellant.

Hugh M. Wilkinson and John D. Lambert, both of New Orleans, for appellees.

ROGERS, Justice.

In a bill of information filed on January 19, 1940, Abraham L. Shushan and three other persons were charged with bribery allegedly committed on October 2, 1937. On March 13, 1940, the defendants were arraigned and pleaded not guilty. The offense charged is a felony, punishable by imprisonment in the State penitentiary for a term of not less than one year and not more than five years.

On April 27, 1943, Abraham L. Shushan, Norvin T. Harris, Jr., and Robert J. Newman, three of the persons charged in the bill of information, filed a motion to have a nolle prosequi entered as provided by Act 323 of 1942, amending and re-enacting Article 8 of the Code of Criminal Procedure. Defendants alleged in their motion that more than three years had elapsed from the date of the filing of the bill of information; that they had not, at any time, been fugitives from justice, but, on the contrary, had always been available to the process of the court, and that, notwithstanding it was his mandatory duty under the statute to enter a nolle prosequi, the district attorney has failed and neglected to do so.

The judge of the district court entered an order on the rule, directing the State, through its prosecuting officers, to show cause at a time fixed why the nolle prosequi should not be entered and the case dismissed.

The State did not file a formal return to the rule. On May 14, 1943, on an agreed stipulation of facts and after argument by the attorney general representing the State and by counsel representing the defendants, the judge sustained the motion and ordered that a nolle prosequi be entered and that the defendants be discharged. The attorney general objected to this ruling and, on his objection being overruled, reserved a bill of exception. On May 21, 1943, the attorney general presented to the judge for his signature the formal bill of exception and also a motion for an appeal to this Court. The judge signed the bill, but, on objection by the attorneys for the defendants, withheld his signature from the order of appeal pending a hearing thereon. The attorneys for the defendants then filed an opposition to the State's motion for an appeal and, on May 31, 1943, the judge, after hearing argument, dismissed the motion for an appeal and, at the same time, withdrew his signature from the bill of exception which the State had reserved in conformity with the ruling of this Court in the case of State v. Le-Bleu, 203 La. 337, 14 So.2d 17. The State, through the attorney general and district attorney, applied to this Court for the necessary writs to compel the judge to grant the appeal or, in the alternative, to exercise its supervisory jurisdiction and to review and reverse the ruling of the judge.

This Court, acting on the State's application, granted a writ of certiorari and rule nisi and later, after hearing, sustained the right of the State to an appeal from the ruling of the trial judge ordering the entry of a nolle prosequi and the discharge of defendants. The Court, in its decree, directed the judge to sign the order of appeal and to reinstate his signature on the bill of exception reserved by the State. State v. Shushan, 204 La. 672, 16 So.2d 227. The judge having complied with the decree, the case was brought to this Court and heard on the appeal by the State.

The facts are undisputed. They are, as shown by the written agreement filed in the record, as follows: On August 21, 1939, the three defendants and two other persons were indicted by the Federal Grand Jury at New Orleans for alleged mail fraud, and, on the following day, an affidavit charging four of the parties, including the three defendants, with bribery growing out of the same transaction was filed in the Criminal District Court for the Parish of Orleans. On October 17, 1939, a new federal indictment, which, in effect, was a substitute for the indictment of August 21, 1939, was returned against the defendants. In December, 1939, defendants were tried and convicted of mail fraud in the Federal District Court on the indictment of October 17, 1939, and on January 2, 1940, they were sentenced to imprisonment in the Federal Penitentiary. Defendants promptly took appeals from their conviction and sentence and were released on bond pending the appeals, and for two years thereafter defendants were continuously present and at large in the City of

New Orleans and within the jurisdiction of the Criminal District Court.

For approximately five months after August 22, 1939, the day on which the affidavit was filed in the Criminal District Court, or until January 19, 1940, no steps were taken to prosecute defendants in the State court. But on January 19, 1940, after defendants had been convicted in the Federal court and while their appeals were pending therefrom, the district attorney filed the information in this proceeding charging defendants with bribery. On March 13, 1940, defendants were arraigned on the charge, pleaded not guilty, and were released on bond.

On January 18, 1941, defendants' conviction in the mail fraud case was affirmed by the United States Circuit Court of Appeals for the Fifth Circuit, 117 F.2d 110. On March 3, 1941, a rehearing was denied and a stay of mandate was ordered for thirty days to permit defendants to apply to the United States Supreme Court for a writ of certiorari. On May 12, 1941, the writ was denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531, and defendants applied for a rehearing of the ruling. Subsequently, two of the original defendants abandoned their applications for rehearing, surrendered to the United States Marshal and were imprisoned in the United States Federal Correctional Institution at Texarkana, Texas.

On October 13, 1941, defendants' application for rehearing of the ruling of the United States Supreme Court on their application for a writ of certiorari was denied, 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed.

564, and on October 23, 1941, defendants surrendered to the United States Marshal. On October 28, 1941, defendants were transported and delivered to the United States Federal Correctional Institution at Texarkana, Texas, to begin serving their sentences.

At all times, from the inception of the prosecution in this case, the filing of the affidavit on August 22, 1939, and the filing of the information on January 19, 1940, up to the time of their surrender to the United States Marshal on October 23, 1941, the defendants were openly and continuously in the City of New Orleans. On September 1, 1942, the defendants were released on parole from the Federal institution at Texarkana, Texas, and since that date have openly and continuously resided in the City of New Orleans and within the jurisdiction of the Criminal District Court, and defendants have never been fugitives from justice.

The agreed stipulation of facts shows that the State never applied for a writ of habeas corpus ad prosequendum to produce the defendants for trial before the Criminal District Court on the charge of bribery during the period from October 23, 1941, to September 1, 1942, while they were incarcerated in the Federal prison at Texarkana; that defendants were never notified to appear, nor were their sureties ever notified to have them appear for any proceeding in the case at bar since they were arraigned on March 13, 1940, and that none of the defendants absented himself, sought any continuance, entered any delaying plea, or failed to be ready to respond to any call

of the Criminal District Court for the Parish of Orleans, nor has he at any time, personally or by attorney, ever applied to the Court, or to any official charged with the prosecution, for a trial of the case.

The State's contentions opposing the defendants' rule to show cause why a nolle prosequi should not be entered and defendants discharged are presented by way of argument and not by formal plea. In the district court and in this Court, when the case was brought here on the State's application for remedial writs, the attorney general and the district attorney contended that the three years prescription provided by Article 8 of the Code of Criminal Procedure, as amended and re-enacted, was interrupted by defendants' absence from the State for the ten months they were incarcerated in the Federal prison or correctional institution in Texarkana. The attorney general and the district attorney invoked also Article 9 of the Code of Criminal Procedure providing that the prescription established by Article 8 of the same code shall be interrupted by the absence of the defendant from the jurisdiction of the court without the written consent of the court first obtained and entered upon the minutes filed in the record of the case. In the brief, which they filed on behalf of the State on the hearing of the rule nisi addressed by this Court to the trial judge, the attorney general and the district attorney for the first time, in connection with their alternative demand that this Court in the exercise of its supervisory jurisdiction should review and reverse the ruling of the trial judge, dis-

cussed Act 147 of 1942 and its application to the issues involved in this case.

Evidently, realizing the difficulty of maintaining them, defendants are not urging on this hearing of the case their contentions that the running of the three years prescription provided by Article 8 of the Code of Criminal Procedure, as amended, was interrupted by defendants' absence from the State while incarcerated in the Federal prison or correctional institution at Texarkana and by their failure to obtain the written consent of the Criminal District Court for their absence from its jurisdiction previous to their departure for Texarkana to serve their sentences under their conviction in the Federal Court. For our own part, we find no merit in the contentions.

Neither in law nor in fact is there any reason why the defendants could not have been tried during the three years following January 19, 1940, the date on which the information charging them with bribery was filed in the Criminal District Court. Certainly the State was not prevented from trying the defendants during the ten months they were confined in the Federal penitentiary or correctional institution at Texarkana, because there was in effect a specially provided and well-known method for bringing them to trial in the State court while they were serving their terms in the Federal prison. See Bulletin No. 384 of the United States Department of Justice prescribing the routine to be followed by state prosecutors who desire to obtain the presence of a federal prisoner for trial in a State court; also Ponzi v.

Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879.

By following the method prescribed in the Bulletin of the Department of Justice, the district attorney of East Baton Rouge Parish, under a writ of habeas corpus ad prosequendum, brought a prisoner from the Federal penitentiary to stand trial in the 19th Judicial District Court on a charge of embezzlement. The writ in that case was applied for on March 8, 1940, and on April 1, 1940, the prisoner was placed on trial in the district court in the City of Baton Rouge, after which he was returned to the Federal prison at Atlanta. The trial was given wide publicity throughout the State and undoubtedly was well known to the attorney general and to the district attorney of the Parish of Orleans. For almost a year and a half after the conclusion of that trial, the defendants in this case resided openly and continuously in the City of New Orleans and nothing was done within that period to bring them to trial on the charge pending against them in this case. During the ten months from October 23, 1941 to September 1, 1942, that defendants were confined in the Federal prison at Texarkana, no attempt was made by the prosecuting officers of the State to sue out a writ of habeas corpus ad prosequendum to produce them for trial in New Orleans, nor was any attempt made to bring them to trial during the eight months following their release from the Federal prison.

■ So far as the State's contention, based on the proviso in Article 9 of the Code of Criminal Procedure, is concerned, it is not suggested what remedy would be open to a prisoner convicted in a Federal court if the judge of the State court, in which the charge was pending against him, should refuse to consent to his departure in the custody of the marshal to serve his sentence under the Federal conviction. Obviously, the proviso in Article 9 refers only to the voluntary absence of an accused from the State and not to his involuntary absence resulting from his conviction in a Federal court and imprisonment thereunder in a Federal prison or institution located outside the State.

The serious question presented for consideration in this case arises on the State's contention that the prescription pleaded by defendants is not governed by Act 323 of 1942, but is governed by Act 21 of the Second Extra Session of 1935 and Act 147 of 1942. The three legislative acts in question are acts amending and re-enacting Article 8 of the Code of Criminal Procedure. Act 21 of the Second Extra Session of 1935 provides in the second paragraph of the proviso that in felony cases, when six years have elapsed from the date of the finding of an indictment, or the filing of an information, it shall be the duty of the district attorney to enter a nolle prosequi if the accused has not been tried. The only cases, in which the running of the prescription is suspended, are those cases mentioned in the third paragraph of the proviso which reads as follows: "Nothing in this Article shall apply or extend to an accused person who has absconded, or who is a fugitive from justice, or who has escaped trial through dilatory

pleas, or continuances obtained by him or in his behalf." In both Act 147 of 1942 and Act 323 of 1942, the prescriptive period for trials in felony cases was reduced from six years to three years.

Notwithstanding that article 8 of the Code of Criminal Procedure was amended and re-enacted by Act 323 of 1942, the State contends that that act is not applicable to this case, because the prior amendment and re-enactment of the article by Act 21 of the Second Extra Session of 1935 has been kept alive, at least so far as the six year prescriptive period established in felony prosecutions is concerned, by the saving clause contained in section 5 of Act 147 of 1942, which also amends and re-enacts article 8 of the Code of Criminal Procedure, and by the general savings clause embraced in Act 35 of 1942.

We cannot accede to that proposition which, if maintained, would have the effect of nullifying a legislative act and of convicting the legislators of adopting, with the approval of the Governor, a wholly useless statute. In the recent case of State v. Theard, 203 La. 1026, 14 So.2d 824, the three years prescription established by Act 323 of 1942 was invoked by the defendant and considered by the Court and the validity of the statute was not questioned by the attorney general or by the district attorney. The defendant in that case was charged with embezzlement, allegedly committed on August 11, 1936, which was about six years prior to the adoption of Act 323 of 1942. Shortly after the bill of information was filed, the defendant, after a hearing on his own application, was adjudged insane by the Criminal District Court and ordered committed to an institution for the insane. On March 29, 1943, the defendant, invoking the provisions of Act 323 of 1942, moved the court to nolle prosequi the bill of information charging him with embezzlement. Upon the hearing, in which the legality of the statute was not questioned, defendant's motion was denied and the ruling was affirmed by this Court on the ground that Act 136 of 1932 (the Lunacy Commission statute) prohibited the trial of an insane person, and to hold that Act 323 of 1942 required the prosecution within three years of an accused whose trial was expressly prohibited by law, would lead to an absurd result; that Act 136 of 1932 is a special statute dealing with a special subject matter and was not impliedly repealed by Act 323 of 1942, which is a general statute in which there is nothing to show the legislative intent to repeal the special statute. State v. Theard, 203 La. 1026, 14 So.2d 824.

Again, the more recent case of State v. Brocato et al., 18 So.2d 602,[1] involved a plea of prescription filed under the provisions of Act 21 of the Second Extra Session of 1935, as amended by Act 323 of 1942. In that case, Brocato and two other persons were charged with embezzlement in bills of information which were filed on May 21, 1941, or about a year prior to the adoption of Act 323 of 1942. On March 2, 1942, the defendants filed a plea of prescription on the ground that the district attorney and his assistants had knowledge of the alleged commission of the offense more than one year prior to the filing of

[1] 205 La. 1019.

the bills of information. As shown by the brief filed on behalf of the defendants, the statute on which they relied in support of their plea of prescription was Act 21 of 1935, 2d Ex.Sess., as amended by Act 323 of 1942, reading in part as follows: "No person shall be prosecuted, tried or punished.for any offense * * * unless the indictment, presentment or information for the same be found, exhibited or filed, * * * within one year after the offense shall have been made known to the judge, district attorney or Grand Jury having jurisdiction * * *."

The validity of Act 323 of 1942 was not questioned in the Brocato case. The State resisted the plea of prescription filed by the defendants in that case solely on the facts, denying that the commission of the offense by defendants was known to the district attorney or to any of his assistants more than one year prior to the filing of the bills of information. After hearing the evidence, the judge of the criminal district court concluded that the commission of the offense was made known to three assistant district attorneys, then serving as such, in the early part of October, 1939. The judge therefore maintained the plea of prescription filed by the defendants and his ruling, after a review of the facts, was affirmed on appeal by this Court. State v. Brocato et al., 205 La. 1019, 18 So.2d 602.

It will therefore appear that neither in the Theard case, nor in the Brocato case, nor in the district court in this case was the validity of Act 323 of 1942 impugned by the attorney general or the district attorney.

It can not be disputed that Act 323 of 1942, as a properly adopted law of this State, must be accorded the same consideration and respect as Act 35 of 1942 and Act 147 of 1942. The three statutes were adopted at the same legislative session, and, as neither carried an emergency clause, they went into effect under section 27 of Article 3 of the Constitution of 1921 at 12 o'clock noon on July 29, 1942, which was twenty days after the Legislature had adjourned.

Act 323 of 1942 was obviously intended by the Legislature to serve as a permanent law, just as much as Act 35 of 1942 and Act 147 of 1942. In fact, the latter statute, as shown by section 4 thereof, was enacted as a supplement to the Criminal Code, to become null and void in all respects if the code should not be enacted or should be declared entirely unconstitutional. The Criminal Code was adopted as Act 43 of 1942. So far no attack has been made on its constitutionality, and the question might well be asked what would become of Act 147 of 1942 should the unexpected happen and the Criminal Code should hereafter be declared entirely unconstitutional.

We do not think that the members of the Legislature can be successfully charged with the manifest inconsistency of adopting Act 323 of 1942 with the intention that its provisions would be immediately and impliedly neutralized by the contemporaneous enactment of Act 35 of 1942 and Act 147 of 1942.

In Weller v. Von Hoven, 42 La. Ann. 600, 7 So. 702, this Court approved

and re-adopted the principle announced by the textwriters that "laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject." In view of this well-recognized legal principle, it is not reasonable to conclude that the Legislature, in enacting a particular statute, intends that it shall be immediately nullified by another statute enacted at the same session. The principle that a repeal by implication is not favored by law is especially applicable as between two statutes passed at the same session of the Legislature. And where two acts relating to the same subject matter are passed at the same legislative session, there is a strong presumption against implied repeal, and they are to be construed together, if possible, so as to reconcile them, giving effect to each, and thereby avoid an implied repeal, rather than to infer that one destroys the other. 59 C. J., Statutes, sec. 533, pp. 928, 929.

■ Article 8 of the Code of Criminal Procedure was amended and re-enacted by Act 21 of the Second Extra Session of 1935, which, in turn, was amended and re-enacted by Act 323 of 1942. From which it follows that when Act 323 of 1942 became effective on July 29, 1942, at 12 o'clock noon, by necessary implication it repealed Act 21 of the Second Extra Session of 1935 so far as they are in conflict. By the adoption of Act 323 of 1942, the Legislature reduced the prescriptive term for trials in felony cases from six years, as fixed in Act 21 of the Second Extra Session of 1935, to three years, thus clearly showing the legislative intent that the

new law should supersede and take the place of the old law establishing the prescription applicable to trials in felony cases. And this is so, notwithstanding that the Legislature, in amending and re-enacting Article 8 and twenty other articles of the Code of Criminal Procedure, by Act 147 of 1942, also fixed three years as the prescriptive term for trials in felony cases. Both statutes are declaratory of the legislative policy that three years is adequate for the trial of felony cases. The legislative policy is wholly in keeping with the provisions of the Federal and State constitutions requiring that all persons accused of crime be given a speedy trial. We see no reason why, by the exercise of due diligence on the part of the prosecuting authorities, any criminal offense can not be tried within three years. Perhaps a criminal prosecution which can not be disposed of within that time should not be undertaken.

The prescription of three years, established as a bar to the prosecution of felony cases by Act 323 of 1942, is not inconsistent with the three years prescription established for the same purpose by Act 147 of 1942. Under section 5 of Act 147 of 1942, the effect of the statute was expressly limited to "crimes committed after the effective date of the Louisiana Criminal Code," which was July 29, 1942, whereas no limitation whatever was placed by the Legislature upon the effect to be given Act 323 of 1942. Both acts may stand together by holding that Act 323 of 1942 applies to crimes committed prior to the effective date of the Criminal Code and that

Act 147 of 1942, as it, in plain terms, declares, applies to crimes committed subsequent to the effective date of the code. This is the view of Dale E. Bennett, Acting Dean and Assistant Professor of Law of the Louisiana State University Law School, as set forth in the Louisiana Law Review, Vol. 5, p. 49, note 233, and referred to in the annotation to Article 8 of Dart's Louisiana Code of Criminal Law and Procedure, pages 6 and 7. Professor Bennett states that it must have been the legislative intent that Act 323 applied to crimes committed prior to the effective date of the Criminal Code and Act 147 applied to crimes committed subsequent to the effective date of the Code, since Act 323 is not in harmony with the Criminal Code, while Act 147 integrates the Code of Criminal Procedure with the Criminal Code. Both acts, as explained by Professor Bennett, are thus given effect, and, when two statutes are enacted at the same session of the Legislature, the Court will so construe them as to make both acts effective, if possible.

There is no reason why effect should be given to the clause in Act 147 of 1942, reducing to three years the prescriptive period for the trial of crimes committed after its effective date, July 29, 1942, and not to the clause in Act 323 of 1942, reducing to three years the prescriptive period for the trial of crimes committed before its effective date, July 29, 1942; otherwise, a person committing an offense on July 30, 1942, would have his trial prescribed in three years under the provisions of Act 147, whereas a person committing an offense just two days before, viz., on July 28, 1942, would not have his trial prescribed until six years elapsed from the filing of the indictment or information as provided by Act 21 of the Second Extra Session of 1935, notwithstanding that act was amended and re-enacted by Act 323 of 1942. It seems clear to us that the Legislature never intended such an absurd result when it adopted Act 323 and Act 147 of 1942, which acts became effective simultaneously.

We find no merit in the State's contention that the prescription applicable to this case is the prescription of six years which was established by Act 21 of the Second Extra Session of 1935, amending and re-enacting Article 8 of the Code of Criminal Procedure, because that act was retained, in effect, by Act 147 of 1942, the saving clause of which, contained in section 5, provides that all crimes committed before the effective date of the criminal code "shall be prosecuted under such rules of Criminal Procedure as were in effect at the time of the commission of such crimes." The contention overlooks the fact that when Act 323 of 1942, which was passed by the Legislature expressly to amend and re-enact Act 21 of the Second Extra Session of 1935, became effective on July 29, 1942, the prescriptive period of six years, established by the latter act, was immediately and impliedly repealed by the former act in which the prescriptive period was reduced from six years to three years.

The provision in the act of 1935 establishing the prescription of six years for the trial of felony cases having been

once repealed, even by implication, the reservation contained in Act 147 of 1942 is powerless to keep the provision in force. Act 323 of 1942 has taken its place and has become the law so far as concerns all pending felony cases in which the offenses are alleged to have occurred prior to July 29, 1942. Moreover, the reservation as set forth in section 5 of Act 147 of 1942 declares that only crimes committed previous to the effective date of that act shall be "prosecuted" under prior laws. And it is very doubtful whether a rule of prescription applying to unduly delayed trials in criminal cases is embraced within the meaning of the term "prosecution." In the recent case of State v. Williams, 192 La. 713, 714, 189 So. 112, 122 A.L.R. 665, this Court, citing numerous authorities for the proposition, held that a "prosecution" is the means adopted to bring a supposed offender to justice and punishment by due course of law, and consists of the series of proceedings from the time when the formal accusation is made by the filing of an affidavit, or a bill of indictment, or information in the criminal court until the proceedings are terminated.

Since a law establishing a prescriptive period for criminal trials forms no part of the series of proceedings had in bringing an accused person to justice, but, on the contrary, acts as a bar to all such proceedings after a stipulated time, it is clear that the saving clause contained in Act 147 of 1942 has no bearing upon, and can not affect, the prescriptive period established by Act 323 of 1942.

Nor do we find any merit in the State's contention that the saving clause contained in Act 35 of 1942, although general in scope, must be regarded as much a part of Act 323 of 1942, its contemporary statute, as if written therein. The State's argument under this contention is that Act 323, which amends and re-enacts Article 8 of the Code of Criminal Procedure, as amended and re-enacted by Act 21 of the Second Extra Session of 1935, does not contain any repealing clause, and therefore fails to provide for releasing and extinguishing criminal liability incurred under the act of 1935, which was in effect at the time of the commission of the alleged crime in this case and which fixed the prescription applicable to such crimes at six years from the filing of the bill of information.

As is well known, Act 35 of 1942 was passed by the Legislature to do away with so-called "legislative pardons," which, as disclosed by many decisions of this Court, have resulted when the Legislature amended a statute defining a crime so as to change the penalty and inadvertently omitted to include in the new statute a savings clause as to pending prosecutions, thereby legislating a pardon to the accused.

The express purpose for which Act 35 of 1942 was adopted, as shown both in the title and the body of the act, was to protect the penalty, forfeiture or liability incurred under the repealed statute. The defendants in this case did not incur any penalty under the repealed statute, which is Act 21 of the Second Extra Session of

1935. If, by their conduct, they incurred any penalty, liability or forfeiture at all, they incurred it under the statute against bribery, the offense with which they were charged. Had that statute been repealed, Act 35 of 1942 might apply to their case and prevent their enjoying the benefit of a legislative pardon. But the law, which the State contends is applicable to this case and which the defendants contend was repealed, is the law affecting the prescription governing unduly delayed trials in felony cases. The defendants did not incur any penalty, forfeiture or liability under the Act of 1935 for any offense they are charged with committing in 1937, or since that date. On the contrary, they and all other citizens possessed the rights and benefits as to prescription conferred by the provisions of the Act of 1935, and their rights and benefits in that respect were broadened, if anything, by the change made by Act 323 of 1942, which reduced the prescriptive period for trials in felony cases from six years to three years.

Our conclusion is that the ruling of the trial judge, maintaining defendants' motion and ordering that a nolle prosequi be entered in the case and the defendants discharged, is correct.

For the reasons assigned, the judgment appealed from is affirmed.

PONDER, J., takes no part.

HAMITER, Justice (dissenting).

The majority opinion correctly states that Acts 323 of 1942 and 147 of 1942 must be accorded the same consideration and respect because both became effective at 12 o'clock noon on the twentieth day after the adjournment of the Legislature and neither carried an emergency clause. Further, I agree that there is no conflict between those Acts with respect to the prescription that they establish as a bar to the prosecution of felony cases; each announces a prescriptive period of three years.

But I cannot agree to the pronouncement that Act 323 applies to crimes committed prior to the effective date of the Criminal Code and that Act 147 is applicable only to those occurring subsequent to the effective date of the Code.

It is true that Act 147 provides in the first part of Section 5 that, "This Act shall apply only to prosecutions for crimes committed after the effective date of the Louisiana Criminal Code * * *." Further, it is true that Act 323 contains no saving clause whatever. But it is also true that the last part of the mentioned Section 5 of Act 147 provides a specific saving clause, it reciting *"and that all crimes committed before such effective date shall be prosecuted under such rules of Criminal Procedure as were in effect at the time of the commission of such crimes."*

As both statutes deal with the same subject matter and there exists no inconsistency between them as to the issue involved herein—that of prescription—they must be tested under the doctrine of statutes in pari materia; they must be construed together as if one act. Kinney v. Edenborn, 151 La. 216, 91 So. 712; State ex rel. Pailet v. Board of Parole of Lou-

isiana, 151 La. 720, 92 So. 312; Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11.

In Crawford on Statutory Construction (1940) page 433, Section 231, with reference to the mentioned doctrine, the following excellent discussion is found: "The rule which thus allows the court to resort to statutes in pari materia finds its justification in the assumption that statutes relating go the same subject matter were enacted in accord with the same legislative policy, that together they constitute a harmonious or uniform system of law, and that, therefore, in order to maintain this harmony, every statute treating the same subject matter should be considered. As a result, statutes in pari materia should not only be considered but also construed to be in harmony with each' other in order that each may be fully effective. *They are to be construed together as if they constituted one act. Moreover, this rule is especially applicable where the several statutes are not only in pari materia, but have been enacted on the same day, or during the same legislative session.* And some courts even go so far as to permit the consultation of vetoed bills that are in pari materia with bills which have been duly enacted into law."

By construing together Acts 147 and 323, just as if they constituted one statute, there is read into Act 323 the saving clause of Act 147. And from this results the inevitable conclusion that the prescription applicable to the instant case is such as was in effect at the time of the commission of the alleged crimes.

The majority opinion, as I appreciate its effect, deletes completely from Act 147 the above discussed unambiguous and specific saving clause; it substitutes an implied intent of the Legislature for a direct and positive expression by that body in that it permits the implied retrospective effect of a remedial statute to prevail over an expressed intention to the contrary.

For these reasons I respectfully dissent.

O'NIELL, Chief Justice (dissenting).

I agree with the statement in the prevailing opinion, taken from the quotation in Weller v. Von Hoven, 42 La.Ann. 600, 7 So. 702: "Laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject". For that reason the effect of the saving clause in Section 5 of Act 147 of 1942, and the general saving clause enacted as Act 35 of the Session of 1942, were not destroyed or neutralized by Act 323 of 1942. I refer particularly to that part of the saving clause in Section 5 of Act 147 of 1942 which declares that all crimes committed before such effective date (the date on which all of the acts of 1942 would go into effect) shall be prosecuted under such rules of criminal procedure as were in effect at the time of the commission of such crimes. The title and the text of Act 35 are as follows:

"An Act

"Prescribing the effect of the repeal or expiration of statutes in relation to any penalty, forfeiture or liability, civil or criminal, incurred thereunder.

"Section 1. Be it enacted by the Legislature of Louisiana, That the repeal of any statute shall not have the effect of releasing or extinguishing any penalty, forfeiture or liability, civil or criminal, incurred under such statute unless the repealing act shall expressly so provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.

"Section 2. That all laws or parts of laws in conflict with the provisions of this Act be, and the same are hereby, repealed."

There is nothing doubtful about the declaration in Act 35 of 1942 that the repeal of any statute shall not have the effect of releasing or extinguishing a criminal liability incurred under such statute unless the repealing act shall expressly so provide; nor is there anything ambiguous or doubtful about the further statement that the repealed statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or *liability*. The word "liability", as the statute says, means liability for a criminal prosecution, as well as liability for a civil obligation. The effect of this general saving statute, Act 35 of 1942, was recognized in the recent case of State v. Dreaux, 205 La. 387, 17 So.2d 559, thus:

"The defendant filed a motion to set aside the alleged illegal sentence imposed upon him by the district judge as a second offender, under the provisions of Act 15 of 1928, on the ground that at the time he was sentenced Act 45 of 1942, which expressly repealed Act 15 of 1928, was in effect and governed the case. * * *

"In Interpretation of Laws—Statutory Construction—(Earl T. Crawford, 1940), Chapter 26, Section 300, page 612, we find:

"Saving Clauses.

" ' * * * If the saving clause is a general one, that is, applicable to all repealing acts, it is considered as merely declaratory of a rule of construction. But whether they are general or not, they are regarded as much a part of every repealing act as if written therein. Nevertheless, they are subject to repeal by subsequent acts; that is, they will not save from repeal any provision whose repeal is clearly intended by the legislature by the later act. To hold otherwise would abridge or limit the legislative power of the various later legislatures, by the enactment of its irrepealable legislation.'

"In Sutherland Statutory Construction, 3d Ed., Horack, Vol. 1 (1943), Chapter 20 —Repeals and Repealing Acts—Section 2042, page 522, it is stated:

" 'Effect of Repeal—Retroactivity—In General. The effect of the repeal of a statute where neither a saving clause nor a general saving statute exists to prescribe the governing rule for the effect of the repeal, is to destroy the effectiveness of the repealed act in futuro and to divest the right to proceed under the statute, which, except as to proceedings past and closed, is considered as if it had never existed. * * *'

"It is our opinion that the defendant became a second offender on the date that he

committed the criminal acts which constitute the second felony and was subject to the punishment provided for by the law, as it existed on that date, in view of the saving clause in Act 35 of 1942."

In even a later case, State v. Gros, 205 La. 935, 18 So.2d 507, 508, the court again recognized the effect of Act 35 of 1942 as a general saving statute. In that case it was argued for the defendant that the indeterminate-sentence law, Act 98 of 1936, had amended by implication Act 44 of 1890, under which the defendant was convicted, and that Act 46 of 1942, which repealed the act of 1936, and which did not contain a saving clause, was violative of the constitutional prohibition against the enacting of ex post facto laws. The court said that, conceding for the sake of argument that the two statutes, Act 98 of 1936 and Act 44 of 1890, were to be read together, as contended by the defendant, nevertheless Act 46 of 1942 was "not without a saving clause," because a saving clause was supplied by Act 35 of 1942. After quoting the latter act in full, the author of the opinion said: "Though this saving clause [Act 35 of 1942] is general in scope, it is regarded as much a part of its contemporary statute, Act No. 46 of 1942, as if written therein. Interpretation of Laws— Statutory Construction—(Earl T. Crawford, 1940) Chapter 26, Section 300; State v. Lucien Dreaux [205 La. 387], 17 So.2d 559."

There is no reason why the three statutes enacted on this subject in the session of the Legislature of 1942, namely, Act 35, Act 147, and Act 323, together with the act adopting the Criminal Code, being Act 43 of 1942, should not be given full effect. Acts 147 and 323 are both amendments and re-enactments of Article 8 of the Code of Criminal Procedure, and are exactly alike as far as any issue in this case is concerned. The first section of each of the acts declares that no person shall be prosecuted, tried or punished for any offense (except for certain crimes not now pertinent) unless the indictment or information or affidavit be filed within one year after the offense shall have been made known to the judge, district attorney, or grand jury having jurisdiction.

In Act 147, which was prepared by and introduced on the recommendation and report of the Louisiana State Law Institute, the crimes which were excepted were given the names which they bear in the Criminal Code; whereas, in Act 323 the crimes which were excepted were given the same names which they bore in Article 8 of the Code of Criminal Procedure, as amended by Act 21 of the Second Extra Session of 1935.

The second paragraph of Article 8 is reproduced exactly the same in both acts, Act 147 and Act 323 of 1942. The third paragraph of Article 8 of the Code of Criminal Procedure, as amended in 1942, is reproduced exactly the same in Act 147 as in Act 323, except that in Act 323 it is said to be the *mandatory* duty of the district attorney, and in Act 147 it is said to be merely *the duty* of the district attorney, to enter a nolle prosequi. And in Act 147 it is said that the court may cause a nolle prosequi to be entered; whereas, in this

paragraph in the Act No. 323 the words "to be" are omitted. These differences between Act 147 and Act 323 are of no importance in this case.

The reason why the Legislature did not deem it necessary to insert a saving clause in Act 323 of 1942 is, first, that the general saving statute, Act 35, adopted at the same session, served the purpose, and, second, that the saving clause in the corresponding act, Act 147 of the same session, also served the purpose. Either one of these saving clauses would have been sufficient. Certainly it was not necessary to have three saving clauses in order to save the State's right to continue with a prosecution under the law prevailing before the acts of the session of 1942 went into effect, that is to say, under the provisions of Article 8 of the Code of Criminal Procedure, as amended by Act 21 of the Second Extra Session of 1935.

There is no provision in Act 323 of 1942 that conflicts with the provision in Section 5 of Act 147 of 1942, that this act, No. 147, shall apply only to prosecutions for crimes committed after the effective date of the Criminal Code, and that all crimes committed before that date shall be prosecuted under such rules of criminal procedure as were in effect at the time of the commission of any such crime. This has reference to Article 8 of the Code of Criminal Procedure, as amended by Act 21 of the Second Extra Session of 1935, which was in effect at the alleged time of the commission of the crime charged in the bill of information in this case.

In this connection, it is stated near the beginning of the prevailing opinion in this case that three of the defendants filed a motion to have a nolle prosequi entered as provided by Act 323 of 1942, amending and re-enacting Article 8 of the Code of Criminal Procedure. In the rule prepared by the defendants and signed by the judge, ordering the State through its proper officers to show cause why the nolle prosequi should not be entered, Act 147 of 1942 was not ignored. On the contrary, the rule ordered the State through its proper officers to show cause "why the nolle prosequi should not be entered in conformity with Acts 147 and 323 of 1942 of the Legislature of the State of La."

The declaration in Section 5 of Act 147 of 1942 that the act should apply only to prosecutions for crimes committed after the date on which the acts of that session of the Legislature would go into effect was merely a declaration that Act 147 of 1942 should not have a retroactive effect, but only a prospective effect.

There is nothing in the phraseology in Act 323 of 1942 that indicates that the Legislature intended that that act should have a retroactive effect. On the contrary, the wording of the act indicates plainly that it was intended to have only a prospective effect. In enacting Act 323 of 1942, the Legislature knew very well that that act, as well as Act 43, adopting the Criminal Code, and Act 35 adopting a general saving clause, and Act 147, would all go into effect on the same day and at the same hour; and in fact all of these acts did go

into effect at 12 o'clock m. on July 29, 1942.

On the thirteenth page of the prevailing opinion [19 So.2d 191] it is said that there is no reason why effect should not be given to "the clause in Act 323 of 1942, reducing to three years the prescriptive period for the trial of crimes committed before its effective date, July 29, 1942." As a matter of fact there is no clause in Act 323 of 1942 purporting to reduce to three years the prescriptive period for the trial of crimes committed before the date on which the act became effective, July 29, 1942. I concede, of course, and in fact it is well settled, that a statute of limitation or prescription may be so worded as to take into consideration time which has passed when the act goes into effect. There would have been no constitutional inhibition against making Act 323 of 1942 retroactive, so as to release from criminal liability all accused persons against whom an indictment or bill of information was not filed within one year after the offense was made known to the judge, district attorney or the grand jury having jurisdiction,—and so as to release from criminal liability all persons accused of a felony if three years had elapsed already from the date of the finding of an indictment or the filing of a bill of information,—and so as to release from criminal liability all persons accused of any crime less serious than a felony if two years had elapsed already from the date of the finding of an indictment or the filing of a bill of information. But, if the Legislature had intended that Act 323 of 1942 should have that retroactive effect,

the intention would have been expressed so plainly as to leave no doubt about it. Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332, 337; Reynolds v. United States, 292 U.S. 443, 54 S.Ct. 800, 803, 78 L.Ed. 1353; Hurry v. Hurry, 141 La. 954, 76 So. 160, 162; State v. Alden Mills, 202 La. 416, 12 So.2d 204.

In the present case the bill of information was filed on January 19, 1940, and the proceeding by rule to compel the district attorney to enter a nolle prosequi was filed on April 27, 1943; that is, three years and more than three months after the bill of information was filed. But Acts 147 and 323 of 1942, amending Article 8 of the Code of Criminal Procedure so as to reduce the six-year period of prescription to a three-year period, did not go into effect until July 29, 1942,—which was less than nine months before the defendant claimed the benefit of the three years prescription.

It is said on the thirteenth page of the prevailing opinion in this case [19 So.2d 191],—if I understand it right,—that unless effect is given to *the clause* in Act 323 of 1942, reducing to three years the prescriptive period for the trial of crimes committed before the date on which the act became effective, July 29, 1942, a person committing an offense on July 30, 1942, would have his trial prescribed in three years under the provisions of Act 147, whereas a person committing an offense two days before, that is, on July 28, 1942, would not have his trial prescribed until six years elapsed from the filing of the indictment or information, as provided by Act 21 of the Second Extra Session of

1935, notwithstanding the act was amended and reenacted by Act 323 of 1942. I respectfully submit that that is a mistake. In the first place, as I have said, there is no "clause in Act 323 of 1942, reducing to three years the prescriptive period for the trial of crimes committed before its effective date, July 29, 1942." In the second place, a crime committed on July 28, that is, on the day before Acts 147 and 323 of 1942 went into effect, would be subject to the prescription of three years commencing on July 29, 1942, under the provisions of Act 323 of the Session of 1942, because that act went into effect on that date. It is true that a crime committed before July 29, 1942, would be subject to the prescription of six years from the date of the filing of the indictment or bill of information as provided for in Article 8 of the Code of Criminal Procedure as amended by Act 21 of the Second Extra Session of 1935; but the period of prescription in such a case could not extend beyond July 29, 1945, or beyond three years from the date on which Act 323 of 1942 went into effect. There is no inconsistency in saying that a crime committed before July 29, 1942, is subject to the prescription of six years commencing from the date on which the indictment or bill of information is filed, and is subject also to the prescription of three years from July 29, 1942, under the provisions of Act 323 of 1942.

In such a case the prosecution is barred by whichever one of the two periods expires first,—the period of six years from the date on which the indictment or bill of information was filed, under the provisions of Act 21 of the Second Extra Session of

1935, or the period of three years from July 29, 1942, under the provisions of Act 323 of that year.

This rule, that an action or a prosecution may be barred by the first-expiring one of two periods of prescription, commencing at different dates, is applicable also to civil cases. The rule is stated in Daniel Deal & Co. v. Patterson, 12 La.Ann. 728, thus: "When a statutory change is made in regard to a particular term of prescription, the time anterior to the promulgation of the change is reckoned according to the old law, and the subsequent time according to the new enactment."

For these reasons I respectfully dissent from the prevailing opinion and decree rendered in this case.