483 So.2d 596 (1986)
STATE of Louisiana
v.
Troy Lynn GROTH.
No. 85-KK-1528.
Supreme Court of Louisiana.
February 24, 1986.
*598 M. Craig Colwart, Tilden H. Greenbaum, Orleans Indigent Defender Program, New Orleans, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Hammond Scott, Walter Becker, Michael E. McMahon, Asst. Dist. Attys., for plaintiff-respondent.
BLANCHE, Justice.
We granted writs on application of the defendant (hereinafter "Groth") to determine whether the state has met its burden of proving that an interruption or suspension of the prescriptive period contained in La.C.Cr.P. art. 578 (1981) has occurred. Specifically, we are called to decide whether the state's inability to bring Groth to trial within two years from September 23, 1981, the date of the filing of the bill of information, was due to events beyond its control. In addition, we are presented with arguments by the state that certain actions by Groth either interrupted or suspended the two year period. 476 So.2d 338 (La. 1985).
The following actions of the lower courts have preceded this application. Based on the chronology of events more fully set forth further in the opinion, Groth filed a motion to quash the bill of information based on a denial of a speedy trial and on the running of the prescriptive period for the institution of prosecutions. The trial court granted the motion. The state applied for writs to the Fourth Circuit Court of Appeal, and that court reversed the trial court's granting of the motion to quash. State v. Groth, 463 So.2d 613 (La.App. 4th Cir.1984). Groth then sought writs to this Court. Writs were granted and we set aside the judgments of the lower courts. The case was remanded to the trial court for an evidentiary hearing on whether the prescriptive period had been interrupted or suspended. State v. Groth, 466 So.2d 451 (La.1985).
On remand, the trial court again granted Groth's motion to quash. Writs were again taken by the state to the Fourth Circuit Court of Appeal, and that court again reversed the trial court's granting of the motion. Groth again sought writs to this Court, and it is this application which is presently before us. For the following reasons we reverse the judgment of the Court of Appeal and reinstate the judgment of the trial court granting Groth's motion to quash the bill of information.
Groth and other co-defendants engaged in an alleged crime spree covering four states. Submitted by the state, and contained in the record, is the following chronology. Groth does not dispute this time table of events.
9/5/81 Armed robbery of Ivory Tower Motel, Hopkinsville, Kentucky.
9/8/81 Burglary of Sternberg Armory in Gulfport, Miss.
9/9/81 Armed robbery of Pizza Inn in New Orleans.
9/12/81 Defendant arrested in New Mexico search of vehicle conducted; Criminal complaint fileddefendant pled guilty as charged possession of marijuana. Sentence 15 days Torrance County jail.
9/14/81 Mississippi warrant for defendant for burglarysigned A.J. Foretish Harrison County, Miss.
9/21/81 Det. Davis in New Orleans received photos and prepared lineup. Defendant identified.
9/23/81 La. filed Bill of Information.
9/29/81 Defendant in custody of Torrance Countyconfessed to Hopkinsville robbery.
9/30/81 Hopkinsville, Kentucky got arrest warrant.
10/5/81 Defendant signed waiver of extradition to Kentucky.
10/12/81 Defendant transported to Kentucky.
3/18/83 Certificate of inmate status from Kentucky.

*599 3/24/83 Defendant filed Speedy Trial Motion from Kentucky.
3/30/83 Christian Circuit Court, Kentuckypled guilty to amended charge of complicity to First Degree Robbery.
4/23/83 Transferred to State Reformatory, LaGrange, Kentucky complicity to robbery 1, Sentenced to 10 years received 4/23/82 (max. expiration date 9/30/91) discharged 12/14/83 by parole to Mississippi hold.
12/14/83 Paroled to Mississippi hold for burglary; Harrison County, Mississippi.
2/10/84 State requested duplicate capiases $100,000.00.
2/23/84 Defendant refused to waive extradition to La.
3/26/84 Arrested by D.A. Investigators Polit and Farrell on extradition to New Orleans4 countsLa.R.S. 14:64.
4/3/84 Mississippi Nolle Prosequi burglary charge.
4/6/84 Defendant Groth arraigned.
7/27/84 State ready for trial.
Article 578 of the Code of Criminal Procedure provides in relevant part:
Except as otherwise provided in this Chapter, no trial shall be commenced:
. . . . . .
(2) In other felony cases after two years from the date of institution of the prosecution....
La.C.Cr.P. art. 578 (1981). Groth was charged by bill of information with four counts of armed robbery in contravention of La.R.S. 14:64 (Supp.1985) on September 23, 1981. Therefore the state had two years from that date to bring Groth to trial, unless prescription was either interrupted or suspended.
The state in brief argues that even though the bill of information was filed on September 23, 1981, and the state was not ready for trial until July 27, 1984 (a period clearly in excess of the two years provided in Article 578), the trial was nonetheless timely because of interruptions under La.C. Cr.P. art. 579(A)(1) & (2) (Supp.1985), or suspension under La.C.Cr.P. art. 580 (1981). Article 579 as it existed at all times relevant to this case provides:
A. The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or (2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state ...
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
La.C.Cr.P. art. 579 (Supp.1985) (1984 La. Acts, No. 671, § 1 added subsection (A)(3) to Article 579. Because of its effective date, it is not applicable.). The state bears the heavy burden of showing that it is excused from trying the accused on a charge later than the period mandated by Article 578. State v. Amarena, 426 So.2d 613 (La.1983); State v. Devito, 391 So.2d 813 (La.1980); State v. Driever, 347 So.2d 1132 (La.1977).
It is the state's first contention that Article 579(A)(1) applies and interrupted the two year prescriptive period. The state argues that Groth's purpose in fleeing the state was to avoid detection, apprehension or prosecution. As to the application of Article 579(A)(1), the burden of proof is on the state. This burden is a heavy one in which the record must clearly establish that the purpose of the defendant's absence was to avoid apprehension, prosecution or detection. See State v. Amarena, supra, and authorities cited therein. There is nothing in the record from which the trial judge could find that the state has carried its burden. Even assuming that Article 579(A)(1) is applicable, it is clear from the record that the state knew of Groth's whereabouts on September 21, 1981, a full two days prior to the filing of the bill of information. Prescription was not interrupted under Article *600 579(A)(1), since it had not begun to run until the filing of the bill of information. At this time the state was aware of Groth's whereabouts. Any delay in bringing Groth to trial within the delays of Article 578 is not attributable to his flight. Therefore, we must find another interruption or series of interruptions within two years from September 23, 1981 if the state is to prevail. See State v. Amarena, supra; State v. Devito, supra (on rehearing).
Next, the state argues that the motion to quash based on defendant's motion for a speedy trial constituted a preliminary plea under Article 580. This article provides: When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence trial.
La.C.Cr.P. art. 580 (1981). This argument is without merit. State v. Lonigan, 298 So.2d 739 (La.1973) (A motion for a speedy trial does not suspend the running of the Article 578 time limitations.)
Lastly, the state argues that Article 579(A)(2) applies and relieves it of its burden of proceeding to trial within the limitations set forth in Article 578, since extradition of the defendant from either New Mexico, Kentucky or Mississippi would have been ineffective because Groth was awaiting trial in these respective jurisdictions, and those jurisdictions would not have granted the extradition at this phase in the criminal justice system. The Court of Appeal accepted the state's argument, concluding that any efforts by the state to obtain defendant's presence in Louisiana would have been ineffective. "Not until Mississippi nolle prosequi its charge on April 3, 1984, was the defendant's presence again obtainable by Louisiana." The Court of Appeal, in essence, creates a pre-conviction exception to the rule stated in Amarena, supra. In so doing, that court finds that at this stage in the criminal justice system the state need not attempt extradition, or engage in other reasonable efforts to obtain Groth's presence in order to avail itself of Article 579(A)(2). We do not agree.
This Court in State v. Amarena, supra has recently considered the quashing of a prosecution because prescription had run. Under very similar facts, we held:
Although the prosecution was early informed of the whereabouts of the defendant, it was reasonably foreseeable that none of the efforts made to obtain the presence of the defendant in Louisiana would be successful; the state did not follow the requirements of any statute (for example see 18 U.S.C. § 4085) or federal regulation in attempting to obtain custody of the defendant for prosecution, although the defendant's own lawyer wrote the Jefferson Parish district attorney and sheriff requesting a speedy trial in Louisiana. The whereabouts of the defendant were known to Jefferson Parish officials for more than two years. His presence in Louisiana was easily obtainable. When the prosecution finally took the appropriate steps to obtain Amarena's presence in Jefferson Parish, he was promptly delivered. The state's argument that the time limitation on his trial was interrupted under C.Cr.P. 579 simply because he was in prison outside the state, and beyond the control of the state, is without merit. The mere physical detention of the defendant in a state or federal prison will not alone serve to interrupt prescription. See State v. Devito, 391 So.2d 813, 814 (La.1980); State v. Shushan, 206 La. 415, 19 So.2d 185 (1944).
State v. Amarena, 426 So.2d at 617. The situation in the case at bar is identical and warrants the same result. While Amarena, supra dealt with the situation where the defendant had already been convicted in the holding state, a distinction which the Court of Appeal relied upon heavily, we find that any such distinction is unwarranted.
*601 As stated, the state was aware of Groth's whereabouts prior to the filing of the bill of information. It was at this point that the state had capacity to act in order to obtain Groth's presence in Louisiana. State v. Devito, supra. We must consider what steps the state undertook. Again we return to the question of whether the state has met its heavy burden of proving that despite its reasonable efforts, Groth could not be brought to trial within the statutory time period set forth in Article 578.
There is no evidence to show that the state at any time attempted to obtain extradition of Groth. While there is testimony that a police officer contacted New Mexico authorities to inform them that Groth was in fact wanted in Louisiana, Sergeant George Tolar testified that the only formal extradition papers ever prepared were for a co-defendant. From the record, the state did not follow the requirement of any statute when dealing with the New Mexico authorities, a state which, along with Louisiana, has adopted the Uniform Extradition Act. See N.M.S.A. §§ 31-4-1 to 31-4-31 (1984); La.C.Cr.P. arts. 261 et seq. (1966, and as amended). In fact, the record reveals that the state did nothing whatsoever to bring Groth back to Louisiana for trial within the two year prescriptive period. We conclude that the state has failed to carry its burden of proving that an interruption under Article 579(A)(2) occurred within the two year period of Article 578.
Even assuming that the state's premise is correct and Groth would not have been released to Louisiana in response to formal extradition, it appears from the record that Kentucky had no problem obtaining Groth after he had served his term in New Mexico. Had the state undertaken some efforts during the two year prescriptive period to bring Groth back to Louisiana for trial, the state would arguably have stated a basis for an interruption under Article 579(A)(2). It is the state's mere reliance on the assumption that the holding state would not release him pre-conviction that is fatal to its position.
While it may be true that most holding states will not release a defendant while he is awaiting trial, this is not an absolute. Louisiana, as well as other jurisdictions operating under the Uniform Extradition Act, allows the release of a defendant awaiting trial. La.C.Cr.P. art. 272 (1966)[1]; K.R.S. 440.330 (1985). If the charges in the state seeking return are more serious than those in the holding state, or as a matter of economics, the holding state prefers to avoid the expenses of trial and incarceration, or for a host of other reasons, a holding state may release a defendant pre-conviction. See Comment (a) under Article 272.
Although not essential to this opinion, as a matter of policy, the state should engage in formal extradition proceedings within the statutory prescriptive period contained in Article 578. Even if the extradition is returned refused by the holding state, it would constitute an interruption under Article 579(A)(2). See State v. Amarena, 426 So.2d at 619, fns. 1-2. The interruption would continue until the defendant is available, see La.C.Cr.P. art. 579(B), and at that time the state would have a new prescriptive period in which to bring the defendant to trial. While we are aware that the time period before a defendant may become available is in some cases lengthy, and the Governor's warrant may expire, see La.C.Cr.P. art. 266 (1966) (An unexecuted warrant expires six months from the date of its issuance.), the state merely has to seek another warrant. The minimal cost of formal extradition, when *602 balanced against a defendant's right to a speedy trial, is outweighed.

DECREE
For the reasons stated herein, the judgment of the Court of Appeal is reversed, and the judgment of the trial court is reinstated. The bill of information is quashed since the delays provided for in Article 578 have elapsed without interruption or suspension.
REVERSED; JUDGMENT OF TRIAL COURT REINSTATED.
MARCUS, J., dissents and assigns reasons.
LEMMON, J., dissents.
MARCUS, Justice (dissenting).
The evidence clearly indicates that the defendant fled and remained outside the state with the purpose to avoid detection, apprehension, or prosecution. La.R.S. 579(A)(1). The state's knowledge of defendant's whereabouts, while pertinent to determining the state's ability to bring the defendant to trial under 579(A)(2), should not affect the interruption of prescription provided for in 579(A)(1). Accordingly, I respectfully dissent.
NOTES
[1] Article 272 provides:

If a criminal prosecution against the demanded person is pending under the laws of this state, or if he has been convicted in a court of this state but has not completely satisfied his sentence, the governor may, in his discretion, surrender him on demand of the executive authority of the other state. The surrender must be pursuant to a re-extradition agreement, and:
(1) If a prosecution is pending the district attorney must agree to the surrender; or
(2) If the person demanded has been convicted, but has not been sentenced or has not completely satisfied his sentence, the court of the conviction must agree to the surrender.