No. 6656.

STATE EX REL. ALLEN JUMEL, AUDITOR, ETC., vs. GEORGE B. JOHNSON.

The judge of a State court has jurisdiction to determine whether the party applying to remove a suit pending before him, to a circuit court of the United States, is one who is, under the act of Congress, *entitled* to remove the suit.

The *title* to an office can not be put at issue in a mandamus proceeding.

A mandamus suit in a State court is not removable to a Federal court on a plea, or allegation, which raises the issue of title to an office.

The right of removing a suit from a State, to a Federal court, is a matter reviewable by the Supreme Court of the United States, under a writ of error to this court.

A writ of error from the Supreme Court of the United States to this court, operating as a *supersedeas*, divests this court of all further jurisdiction of the case.

APPEAL from the Fourth District Court, parish of Orleans. *Houston*, J.

*H. N. Ogden*, Attorney General, for relator and appellee.

*John Ray* and *Hugh J. Campbell*, for defendant.

The opinion of the court was delivered by

MANNING, C. J. Allen Jumel, the Auditor of Public Accounts of this State, alleges that George B. Johnson refuses to deliver to him the keys, archives, books, public records, and papers belonging to that office, and prayed and obtained a mandamus to compel their delivery, which was issued in the alternative form on the twenty-seventh day of April of the present year.

Before filing any answer, the respondent presented a petition for the

State ex rel. Jumel vs. Johnson.

removal of the cause from the Fourth District Court of this city to the Circuit Court of the United States, and tendered a bond in accordance with the act of Congress of March 3, 1875. The judge refused permission to file the petition and bond, and a bill was reserved to his ruling.

The respondent's counsel argue before us that the reception of the petition for removal and accompanying bond was not optional with the judge to whom it was presented, nor was he at liberty to consider whether the allegations of the petition justified the transfer of the cause, but that the reception and filing of the petition was a matter of right of the respondent, and the transfer was compulsory as soon as it was filed. The position is broadly stated in their brief, that such filing *ipso facto* transfers the cause to the United States court, and that court alone can consider and determine whether the petition and bond are sufficient to authorize the transfer. The authority of Dillon is quoted as sustaining this position.

We can not approve it. The language of the act of Congress does not support it. That enactment is as follows: "That whenever either party * * *entitled to remove any suit* * * shall wish to remove such suit from a State court to the Circuit Court of the United States * * * he may file a petition in such suit in such State court * * * and shall make and file therewith a bond * * * and it shall then be the duty of the State court to accept such petition and bond and proceed no further in said suit."

The duty of the State court is to accept the petition and bond, and to proceed no further in the suit, whenever a party thereto, who is entitled to remove it, shall present them. But what is the court to do when the petition and bond are presented by a party who is not entitled to remove the suit? And how shall the court discover whether its duty is to accept or reject the petition, to proceed with the cause or to stay proceedings, until it has ascertained whether the party presenting the petition and demanding the transfer is or is not entitled to remove it? The order of transfer presupposes an inquiry into and judicial determination upon the right of the party to remove the cause, and until that inquiry is made the State court can not know whether the applicant for the transfer is entitled to it, and until the court does know that fact it should not judicially determine that the transfer shall be made.

Upon the refusal of the court to permit the petition for transfer and bond to be filed, the respondent answered, setting up title to the office of Auditor, and averring that he was elected to that office on the seventh of last November, and was so declared by the returning officers, and was commissioned by the Governor, and has qualified, and has "acted as Auditor until about the twenty-fifth of April of the present year, when his office was taken forcible possession of by persons acting under the

State ex rel. Jumel vs. Johnson.

authority of Francis T. Nicholls, Governor of the State of Louisiana, without any legal or rightful authority, by which unlawful acts he has been prevented from discharging the duties of his office." He specifically denies that the relator is the legal and rightful Auditor, and prays that the writ of mandamus be refused, and the suit be dismissed.

This presents distinctly the issue of the rightful title to an office, an issue which can not be tried in this form of proceeding. A mandamus will not issue to test the right to an office. That doctrine is coeval with the origin of the writ, and has often been applied by this court. State ex rel. Vienne vs. Hyams, 12 An. 719; State ex rel. Sternberg vs. Lagarde, 21 An. 18; Hero's case, *idem* 336. In Sternberg's case, where he alleged title to the office of sheriff and applied for the writ to compel his predecessor to deliver to him the room, keys, papers, records, etc., belonging to it, our immediate predecesors held that it was not the office was in dispute, the right to which could not be inquired into under an application for a mandamus, but it was the room, books, papers, etc., belonging to that office, and the court made the writ peremptory. And this ruling is founded upon the express provision of our Code which permits a mandamus to issue to a public officer to compel him to deliver to his successor the papers and other effects belonging to his office. Code of Practice, art. 833.

When the respondent, in his answer to the rule, presents an issue that is foreign to the use for which the writ may be invoked, he can no more be heard than a relator who shall seek to test the title to an office under the guise of a proceeding, the ostensible object of which is to obtain possession of the books and insignia of the office. Such is the dictum of a recognized authority on the subject: "But, if it be apparent to the court that instead of a proceeding whose object is only to get possession of the books and insignia of the office, the writ is invoked in reality to test the title to the office, and that the question of title is the real point in issue, it will refuse to lend its aid by mandamus." High's Extraordinary Legal Remedies, sec. 77. It is manifest then that the respondent can not put at issue the title of the relator to the office of Auditor in this proceeding.

We have postponed the consideration of the respondent's right to transfer the cause to the United States Court until now, because it was necessary first to determine what was the nature of the present proceeding, and to define the limits within which it could be used by either of the parties.

The right of transfer is founded upon the act of Congress which provides for the enforcement of the right of suffrage of colored persons, wherein it is enacted that " whenever any person shall be defeated or deprived of his election to any office * * * by reason of the denial

to any citizen, who shall offer to vote, on account of race, color, or previous condition of servitude, * * * such person may bring any appropriate suit or proceeding to recover possession of such office," and upon the other statutes which specify the classes of cases that are removable. A basis is laid for the application, by averments in the petition for removal that at least ten thousand colored citizens who offered to vote at the election of seventh November, 1876, were denied the right to vote on account of their color and previous condition of servitude, and that by reason of such denial, the respondent is deprived of his office.

The issue thus attempted to be raised in this petition for removal is identical with that presented by the answer, viz.: the title to the office of Auditor, and we have seen that under no circumstances can the title to an office be inquired into by a mandamus. Since then the right to remove the cause is claimed because of the assumption that the proceeding has a quality which it has not, it follows that the refusal to remove was proper.

We shall make the writ peremptory, and in doing so it is obvious that we recognize the relator as the Auditor of Public Accounts of this State. There are persons and facts of which a court takes judicial cognizance. This court takes cognizance of the fact that Francis T. Nicholls is the Chief Executive of this State, and regards his commission as furnishing a *prima facie* title to an office. We take judicial cognizance of the persons who hold the principal offices of State—of the Attorney General who represents the State in this proceeding—of the relator, as the Auditor. Government could not exist, under our form, without thus taking certain things for granted. Government must have a beginning, and it is an elementary and a necessary principle, that the courts, constituted by and organized under a government, must recognize the authority under which they act.

But this does not prevent the respondent from inquiring into the rightfulness of the relator's title to his office in that form of procedure which the law has designated for that purpose. There is a mode provided by law, and indicated as the special machinery to be used by one who complains that another has intruded into his office. Such inquiry can not be provoked by a respondent in an answer to a rule why a mandamus should not issue, nor could the relator have demanded an adjudication of his own title by invoking the writ for that purpose.

Let the peremptory writ issue, commanding the respondent to deliver to the relator the keys, archives, books, records, and papers belonging to the office of Auditor of Public Accounts of the State, and it is further ordered and decreed that the relator have and recover of the respondent the costs of both courts.

State ex rel. Jumel vs. Johnson.

### ON THE RULE TO EXECUTE JUDGMENT.

SPENCER, J. A writ of error having been granted, with supersedeas, from the decree in Jumel vs. Johnson, this court is divested of all jurisdiction and control of the case, or of any part thereof. That writ emanating from the Supreme Court of the United States, directs this court to send up the record, and forbids, in effect, the execution of our decree. We are bound to respect and obey this mandate.

The defendant has clearly the right to have the question of removal passed upon by the Supreme Court of the United States, as it is a right claimed under an act of Congress, and denied to him.

If he had the right to remove, *any further proceeding* in the court below or in this court, *after his application to remove was duly made*, is *coram non judice, and null and void.*

This fact shows that the question to be decided by the Supreme Federal Court underlies every part of this cause, for *if there was error* in refusing the removal, *there is no decree* of this court or of the court below *to be executed.*

The motion and rule is discharged and denied.

---

### CONCURRING OPINIONS.

MARR, J. By timely application in the court below, the respondent sought to have this cause removed into the Circuit Court of the United States under the act of Congress approved third of March, 1875.

The case, in my opinion, was one of which the circuit court could not have taken jurisdiction, either by original process or by removal, and I concurred in the decree of this court affirming the judgment of the court below refusing to allow the removal.

The respondent applied for and obtained a writ of error, to have the decree of this court reviewed by the Supreme Court of the United States, and he gave bond, which was satisfactory to and was approved by the Chief Justice of this court, to operate as a supersedeas.

The Attorney General now moves to have the decree of this court sent down to the district court in which the proceeding originated to be executed. In my opinion, this can not be done.

With a perfect conviction that there is no error in the decree of this court affirming the judgment of the court below, it is obvious that this is the precise question to be determined by the court having supervisory jurisdiction, the Supreme Court of the United States, and, from the moment the writ of error was allowed and the bond approved, this court ceased to have jurisdiction of the cause for any purpose whatsoever.

There is, in my opinion, but one Federal question involved in this case,

but one question which the Supreme Court of the United States can take cognizance of, and with respect to which this court is subordinate to the Supreme Court of the United States, and that is, whether the respondent was entitled to have the cause removed from the State court into the circuit court.    This question depends purely and exclusively upon the laws of the United States.    The respondent claimed a right under the laws of the United States, the right to have the cause removed into the circuit court; and he claimed exemption under the laws of the United States from the jurisdiction of the State court.    This court, the tribunal of last resort under the laws and constitution of the State of Louisiana, decided that he was not entitled to the right and exemption asserted and relied upon by him.    If this decision is not subject to revision by the Supreme Court of the United States, it is not possible to imagine what decision of a State court of last resort would be subject to appeal or writ of error.

So far as the right to the benefit of the writ of error is concerned, it is not a question as to whether the State court decided correctly; the whole inquiry is limited and within a very narrow compass: Did the court pass upon and determine a question arising under the laws and constitution of the United States ?    Did the party demanding the writ of error claim a right or exemption under the laws and constitution of the United States; and was the decision against the right or exemption thus asserted and claimed ?

It is the law of the United States alone which gives the right of removal; it is the law of the United States alone which exempts the party who claims the right of removal from the authority and jurisdiction of the State court, and in order to determine whether the State court had jurisdiction it was necessary to decide whether the asserted right of removal, the exemption claimed, actually existed in the given case under the laws and constitution of the United States, and the State court of last resort having decided that the right and exemption did not exist, there is no remedy or relief for respondent except by resort to the Supreme Court of the United States, properly vested with jurisdiction in all such cases.

This court may have decided correctly; if so, the decree will be affirmed by the Supreme Court of the United States. This court may have erred; if so, the court below was without jurisdiction, this court was without jurisdiction, and the whole proceeding was *coram non judice*, and absolutely void. And yet this error can be corrected only by the Supreme Court of the United States.

Conceding that is a proper case for writ of error, it is urged that the judgment may be executed provisionally, and that the public interest demands that it shall be executed provisionally. But this proposition is not tenable.    The writ of error does not necessarily operate as a super-

State ex rel. Jumel vs. Johnson.

:sedeas, but if it is taken, and sufficient bonds given within the time limited by the laws of the United States, the supersedeas is a mere matter of course, a necessary legal consequence.

When the respondent had obtained an order of appeal to this court, .and had given the requisite bond, the court below was divested of jurisdiction, and this court would have interfered, by prohibition, if necessary, to prevent any attempt to execute the judgment appealed from until the matter could be heard and determined in this court. Why? Because it was the right of the respondent to appeal; it was his right to make that appeal suspensive; and the appellate court was bound to protect him in the enjoyment and exercise of that right. By what process of reasoning can it be shown that the appeal which vested jurisdiction in this court necessarily suspended the execution of the judgment, if the writ of error which vests jurisdiction in the Supreme Court of the United States, leaves this court free to order the execution of its decree?

Appeals and writs of error are very frequently frivolous; they are often taken merely for the purpose of delay, without a hope of ultimate success. Great inconvenience, loss, and injury may be occasioned to individuals and to the public by improper resort to appellate tribunals, but if the party cast in a suit chooses to invoke the aid of an appellate court having jurisdiction, his right to do so can not be denied and should not be abridged, and it is better for individuals, better for the public, to suffer the inconvenience of delay and temporary suspension in the enforcement of a right than to incur the risk of depriving one of the right to have his complaint heard and determined in the highest judicial tribunal having jurisdiction.

There may be some question as to whether this is " a *suit* at law or in equity," within the meaning of the act of Congress. In my opinion it is a *suit* at law. But if I had any doubt on that point, I should give the respondent the benefit of that doubt, and I would prefer, in any case, to err in favor of the right of appeal rather than risk doing the wrong of refusing that right improperly.

I concur in the opinion and conclusions of Justice Spencer that the rule should be discharged.

———

EGAN. J. The writ of error having been granted, and a sufficient bond given to operate a supersedeas under the act of Congress, I am unwilling, in this case, to disregard it by making the rule absolute. The considerations of public policy and State necessity which may operate in such cases to prevent interference through the Federal courts with the operations of any department of a State government are certainly very grave and entitled to due weight, but should probably be taken into ac-

count before granting the writ of error, a matter with which this court,. as such, has nothing to do. In case of doubt, I should always incline to give every litigant the benefit of every legal remedy. I think, however, that the tendency to trench upon the jurisdiction of the State courts latterly displayed, and to transfer causes with too much facility, should not be encouraged by us. That it has not been in the present case is manifest from our decree making the mandamus peremptory. Neither am I prepared to say that *in a case which in itself involves no Federal question* any party may, by mere frivolous application for removal from a State court to a Federal court, entitle. himself, as a matter of right, to a writ. of error for that reason. By reason, however, of the present attitude of this case, and of the circumstances attending it, I concur in the discharge of the present rule.