95 So.2d 55 (1957)
STATE of Louisiana ex rel. Archie D. SAINT
v.
Leonard J. TOUPS et al.
No. 4423.
Court of Appeal of Louisiana, First Circuit.
May 2, 1957.
*56 Wollen J. Falgout, Thibodaux, for appellant.
Archie D. Saint, Thibodaux, for appellee.
ELLIS, Judge.
This is a mandamus proceeding brought in the name of the State of Louisiana in the relation of Archie D. Saint as City Judge of the City of Thibodaux and the Second Ward of the Parish of Lafourche, Louisiana, against the Board of Trustees of the City to compel them to pay him ½ of his salary increase as provided by Section 4 of Act 326 of 1956, LSA-R.S. 13:1870 note.
The respondents filed an exception of no right of action directed to the question of whether or not the State of Louisiana is a proper party to this proceeding. In other words, they contend there is no right to bring the action in the name of the State on the relation of Archie Saint. Respondents also filed an exception of no cause of action which counsel for them in his brief states "concerns itself with the question of whether or not relator is a duly elected and qualified judge of a properly constituted court and if he is a duly elected and qualified judge of a properly constituted Court, whether he is entitled to the relief sought since the City of Thibodaux and/or Ward 2, the area which appellee is serving, had a population in 1950 of less than 10,000 people. The exception of no cause of action also concerns itself with the question of whether or not mandamus was the proper procedure in this suit since a controversy exists between the parties as to which Act of 1956 is controlling.
All exceptions were referred to the merits by the Lower Court and after trial were overruled and judgment rendered in favor of the plaintiff ordering the writ of mandamus to be made peremptory and the respondents ordered to pay the increase in salary provided for in Act 326 of 1956. From this judgment respondents have appealed.
The exception of no right of action questions the right to file this suit in the name of the State on the relation of plaintiff. Article 829 of the Code of Practice is as follows:
"`Mandamus' defined.This is an order issued in the name of the State by a tribunal of competent jurisdiction, and addressed to an individual or corporation, or court of inferior jurisdiction, directing it to perform some certain act belonging to the place, duty or quality with which it is clothed."
A mere reading of the above Article should be sufficient to dismiss counsel's exception, however, he cites the case of State ex rel. Hart v. Burk, 33 La.Ann. 498. This case is not apposite as clearly shown by the following remarks of the court therein, viz.:

*57 "The reply is, that from whatever standpoint it may be viewed, this is a proceeding against the State, either directly or indirectly; that its property is levelled against, and that this court is called upon to order the defendants to take it from the State Treasury against the will of the State, and to give it to the plaintiff; in other words, to compel the defendants to act beyond their powers."
The exception of no right of action was properly overruled.
As to the exception of no cause of action, the allegations of the petition which are taken as true, without a doubt state a cause of action. Counsel's exception of no cause of action is grounded upon facts which would necessitate a trial on the merits other than his contention that mandamus is not the proper procedure in this suit.
The District Court in its written reasons for judgment disposed of this contention by the respondents as follows:
"Respondents filed an exception to the relator's right to proceeding by mandamus, contending that mandamus will not issue to compel public officials to perform a purely ministerial duty and will not lie against them to compel them to perform an act in which they have any discretion. In the recent case of State ex rel. Richardson v. Board of Trustees, Teachers' Retirement System, 29 So.2d 489 at page 492, the Court of Appeal, First Circuit, held:
"`* * * It is now settled to a point where it is no longer disputed that mandamus will lie to compel a public officer to perform a plain duty that is made ministerial by statute. * * *'
"In the case of Dupuy v. Jones, 15 So.2d 528, at page 529, the Court of Appeal, First Circuit, held:
"`As a general rule a public official cannot be forced by mandamus to perform an official duty where he is invested with a certain amount of discretion and judgment as to the manner and the necessity of the performance of such duty. But where this duty is fixed by law and its performance is made mandatory on the official, he can be compelled by a mandamus to perform that duty, even though the statute may require, in some degree, a construction of the law and the determination of a question of fact as to whether or not the duty is to be performed. Cook v. City of Shreveport, 163 La. 518, 112 So. 402; Code of Practice, Articles 830 and 834.'
"In the case of State ex rel. Nunez v. Baynard, 15 So.2d 649, at page 655, the Court of Appeal, First Circuit, cited with approval the case of Cook v. City of Shreveport, 163 La. 518, 112 So. 402, which upheld the proposition that mandamus will lie to compel a public officer to perform a plain duty made ministerial by the provisions of a statute, and further stated:
"`The duty of a public officer does not become less ministerial, when plainly devolved upon him by Statute, directing him to perform an act in regard to which no discretion is committed to him, although the statute may require, in some degree, a construction of its own language by the officer.'
"The cases cited by respondents in support of their position, State ex rel. St. Martin v. Police Jury of Parish of St. Charles, 29 La.Ann. 146, and State ex rel. Maspereau v. Batt, 40 La.Ann. 582 [4 So. 495], are not apposite."
Counsel for respondents criticizes the above reasons for overruling his exception by arguing that in this case the court is not merely concerned with the construction to be given a statute, it is called upon to decide whether or not an act, Act 422 of *58 1956, LSA-R.S. 13:870 and note, which is presumed to be constitutional until judicially declared otherwise, is to be brushed aside and allow the court to order the compliance with the provisions of another act, Act 326 of 1956, which under the jurisprudence of this state is repealed. There is no distinction between the decision with regard to the construction of the statutes involved in the cases cited and the decision in this case as to which law or Act the respondents should be compelled to obey, if at all. The duty imposed upon the respondent under either Act is purely ministerial and the mere fact that the court must decide which act governs this ministerial duty does not effect relator's right to mandamus.
The real issue in this case on the merits is whether Act 326 of 1956 or 422 of 1956 shall govern, or, posed in another manner, whether Act 422 of 1956 supercedes or repels Act 326 of 1956. Our brother below in his written reasons covered this question fully and clearly and we adopt and quote said reasons:
"* * * The defense further takes the position that Act 422 of 1956 supersedes Act 326 of 1956; that the City of Thibodaux, must then continue to operate as a Justice of the Peace Court, and that only the City Marshal's salary is increased; that there can be no Clerk of Court, and that even if Act 326 of 1956 is applicable, that the population of Ward 2 of Lafourche Parish, Louisiana, must necessarily be nine thousand, four hundred thirty-two (9,432) inhabitants (the last, or 1950 Federal Census) because LRS [LSA-R.S.] 1:11 reads that:
"`Except as otherwise provided, the number of inhabitants of a political subdivision is that shown by the latest regular or special federal census.'
"The respondents claim that if Act 326 of 1956 prevails, the salary of Judge Saint should be based on a population of less than ten thousand (10,000) inhabitants.
"Act 326 of 1956, approved by the Governor on July 10, 1956, provides in Section 4 thereof:
"`* * *; a city judge serving in a ward or wards wherein the population is 10,000 or more, but less than 20,000, shall receive an annual salary of not less then $4,800; * * * said salaries shall be paid monthly on the judge's own warrant, one-half by the police jury of the parish in which said court is located, and one-half by the respective municipalities wherein said court is located * * *',
and in Section 7 thereof:
"`In wards of more than 10,000 inhabitants, the judge of the city court shall appoint a suitable person as Clerk of court, whose salary shall be not less than $250.00 per month, and may appoint such deputy clerks, whose salary shall not be less than $150 per month, * * *',
and in Section 14 thereof:
"`The provisions of this Act shall not apply to the City Courts of Baton Rouge, Monroe, Alexandria, New Orleans or Shreveport',
and in Section 15 thereof:
"`All laws or parts of laws, general or special, in conflict with the provisions of this Act are hereby repealed.'
"Act 422 of 1956, approved by the Governor on July 12, 1956, the Title of which reads as follows:
"`An Act to Amend and Re-enact Section 1870 of Title 13 of the Louisiana Revised Statutes of 1950, to increase the salary of the marshal from $2,000 to $3,600 per annum.'
uses verbatim the language as contained in LRS 13:1870, with the exception of that portion of the section of 1870 dealing with the salary of the marshal and with the exception that each of the sub-paragraphs contains *59 letters for identification, whereas the former act omitted any identifying marks for the sub-paragraphs.
"Act 326 of 1956 fixed the salary of the marshal by providing that he shall receive in civil matters the same compensation as received by constables, but makes no provisions for any additional salary where the population is more than ten thousand (10,000) inhabitants.
"A reading of Act 326 of 1956 shows that it purports to cover the entire subject matter relative to city courts and judges of city courts, other than those expressly excepted. It deals with all phases of city courts as to construction, composition and jurisdiction of the judge, clerks and marshal. It increases the civil jurisdiction of the city court. It increases the powers and duties of the city judge and the Clerk of court. It increases the salary of the city judge. No increase is made in the duties and powers of the city marshal.
"In the recent case of Chappuis v. Reggie [222 La. 35], 62 So.2d 92, on page 95 the Supreme Court reviewed the jurisprudence on statutory construction, and particularly as applicable to statutes passed at or about the same time, or at the same Session of Legislature, and stated:
"`The uniform jurisprudence is to the effect that all statutory provisions are to be given effect whenever possible. LSA-Civil Code of Louisiana, Art. 17; State v. Texas Co., 205 La. 417, 17 So.2d 569; Town of Abbeville v. Police Jury, 207 La. 779, 22 So.2d 62; Melancon v. Mizell, 216 La. 711, 44 So.2d 826. If acts can be reconciled by a fair and reasonable interpretation, it must be done, since the repeal of a statute by implication is not favored and will not be indulged if there is any other reasonable construction. Town of Abbeville v. Police Jury, supra; State v. Standard Oil Co. of La., 188 La. 978, 1054, 178 So. 601; Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11; State v. Jones, 220 La. 381, 56 So.2d 724. Moreover, where two acts relating to the same subject are passed at the same legislative session, there is a strong presumption against implied repeal, and they are to be construed together, if possible, so as to reconcile them, giving effect to each, State v. Shushan, 206 La. 415, 19 So.2d 185; City of New Orleans v. Board of Supervisors of Elections, 216 La. 116, 43 So.2d 237. In the latter case this Court quoted with approval the following language: "Where it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws * * *. These rules are particularly applicable to statutes passed at or about the same time, or at the same session of the legislature, since it is not to be presumed that the same body of men would pass conflicting and incongruous acts." 216 La. at pages 144-145, 43 So.2d at page 246.
"In State v. St. Julian, 221 La. 1018, 61 So.2d 464, the court stated:
"`We are not unmindful of the fact that it is our duty to harmonize and reconcile the acts if possible * * *'
"Applying the above rules of statutory construction, we hold that Act 326 of 1956 is a special statute dealing with all city courts other than those expressly excepted therein, and that it was the intention of the Legislature in passing said act to clearly cover all phases of city courts, other than those specially excepted from its provisions, and in Section 15, to repeal all laws or parts of laws, general or special, other than those covering the five city courts excepted therefrom.
"With reference to Act 422 of 1956, we hold that it covers the office of marshal, and that all other portions *60 thereof dealing with city courts and clerks of court, since these are covered by Act 326 of 1956, must be read out of the act or disregarded. Were the court to hold that Act 422 of 1956 superseded Act 326 of 1956, as contended by respondents, there would then be presented the situation where the various special laws relative to city courts, and conflicting with the provisions of Act 326 of 1956, would be repealed, and all city courts would then be controlled by the very limited provisions of Act 422 of 1956. This could not have been the Legislative intent.
"Attention is called to Section 1, Paragraph G, of Act 422 of 1956, which provides that in cities of more than ten thousand (10,000) inhabitants, all city judges would receive a salary of Three Thousand and no/100 ($3,000.00) Dollars regardless of the population above ten thousand (10,000), and regardless of the amount of work done by the different courts.
"Respondents in their answer (Article 13) cite the case of City of New Orleans v. Board of Supervisors of Elections for Parish of Orleans, 216 La. 116, 43 So.2d 237, in support of their contention that it is not necessary that a section in a statute, or a statute itself, he repeated in its entirety in order to have same amended and re-enacted, as is required by Sections 16 and 17 of Article 3 of the Constitution [LSA-Const.]. Section 16 of Article 3 provides that every law enacted by the Legislature shall embrace one object, and shall have a title indicative of such object. Section 17 of Article 3 provides that no law shall be revised or amended by reference to its title, but in such cases the act revised or section amended shall be re-enacted and published at length.
"The only object in the title of Act 422 of 1956 is to amend R.S. 13:1870 for the sole purpose of providing `to increase the salary of the marshal', and there is nothing in the title which suggests or indicates that the object, aim or purpose of that statute was to provide for the salaries of the Judges and Clerks of the city courts.
"A title which fairly indicates the subject dealt with in an act of the legislature, and which cannot deceive or mislead anyone reading the title of the act, is sufficient compliance with the requirement that the title shall be indicative of the object of the act (City of New Orleans v. Board of Supervisors of Elections, supra)
"It is true that in City of New Orleans v. Board of Supervisors of Elections for Parish of Orleans (supra) the Court held that `It is not necessary that a section be repeated in its entirety where certain paragraphs or subdivisions are being amended and re-enacted.'
"It is to be noted in this case the particular section amended and re-enacted was sub-paragraphs (I) and (K) of Section 4 of Act 159 of 1912. Since that act had sections duly numbered and sub-paragraphs duly identified by letters of the alphabet, it was only necessary to repeat those sections and sub-paragraphs that they wished to have amended and re-enacted, for the reason that they were separately described by separate identities.
"In the instant case, Section 1870 of Title 13, prior to its amendment, had no identifying marks whatsoever for its sub-paragraphs. Therefore, in order to increase the salary of the marshal, it was made necessary by the provision of Section 17, Article 3 of the Constitution to recopy the entire Section 1870. The legislative intent in the passage of Act 422 was to provide an increase in the salary of the marshal, since none was provided in Act 326 of 1956".
*61 By way of further answering respondent's contention that Act 422 being the last expression of the legislative will, should govern, we take the liberty of quoting two opinions of our learned attorney general Hon. Jack P. F. Gremillion concerning Act 326 of 1956 and Act 422 of 1956, and containing general principles of interpretation of two Acts which apparently conflict. While the first opinion deals specifically with the answer to an apparent conflict between Act 326 of 1956 and Act 247 of 1956 [LSA-R.S. 13:2338 and note] and in view of the fact that the latter Act is not involved in the question posed in the case at bar, we wish to state that this opinion is cited strictly for the sound rules of interpretation enumerated in deciding which Act shall prevail in case of conflict. The second opinion is comprehensive in its nature and deals directly with the question in this case as to whether Act 326 of 1956 was superceded by Act 422 of 1956. Both opinions are clear and logical and we hereby adopt the opinion of August 9, 1956 in its entirety and that portion of the opinion of July 23, 1956 outlining the logic to be followed where two acts are apparently in conflict as an answer to counsel for respondent's contention that Act 422 of 1956 superceded Act 326 of 1956:
 "August 9, 1956
 "Honorable J. Y. Gilmore
 "Judge, City Court of Morgan City
 "Morgan City, Louisiana
"Dear Judge Gilmore:
"On July 23, 1956 we addressed an opinion to you with regard to certain acts of the Legislature of 1956, dealing with city courts.
"Because of numerous requests we have received with regard to these acts from some of the Judges of the City Courts, we have decided to address an answer to all the questions thus raised with regard to these acts, and we will send the interested parties copies of this opinion, rather than to write separate opinions on each inquiry. This will mean repetitiousness somewhat of what was said to you and will also make mention of certain acts which you did not mention and which were not known by us at the time the letter was addressed to you. We did not have an adequate index to the acts and since the official index has not been completed, it may well be that some of the acts adopted might have escaped our attention.
"We have located 17 acts of the Legislature of 1956 dealing with City Courts, 14 of which were special acts and three general in nature. There were also two acts proposing constitutional amendments, but we will not consider these constitutional amendments. The three general acts referred to are Acts 257 [LSA-R.S. 13:1870 note], 326 and 422.
"We will first state the general principle of law which may be pertinent in considering these acts. In the case of Chappuis v. Reggie, 222 La. 35, 62 So.2d 92, the Court states as a rule of law `where it is possible to do so, it is the duty of the courts, in the construction of statutes to harmonize and reconcile laws * * * These laws are particularly applicable to statutes passed at or the same time, or at the same session of the Legislature, since it is not presumed that the same body of men would pass conflicting and incongruous acts' (citing [City of New Orleans v. Board of Supervisors] 216 La. 116, 43 So.2d 237 and [State v. Shushan] 206 La. 415, 19 So.2d 185). If no portion of these acts can be reconciled, the last expression of legislative will would control under authority of State v. St. Julian, 221 La. 1018, 61 So.2d [464] 466, from which we quote as follows:
"`* * * There is no other reasonable rule that could be applied to conflicting statutes passed at the same session of the legislature than to hold *62 that the later expression of the legislative will must govern * * *'
"It is the general rule that if a special statute is enacted for a particular case, it is not presumed that the legislature intended to repeal or amend such a special statute by the enactment of a general statute on the same subject; also, as above stated, the general rule is that a general statute does not repeal a special statute unless the purpose so to do is clearly manifest. (See City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309; 25 R.C.L. Par. 177, p. 928; 50 Am.Jur., p. 565, Sections 564 and 565.)
"From the above, it is our opinion that unless it is clearly manifest that any general statute of 1956 covering City Courts shows a purpose to repeal special statutes, or it is manifest that a general statute has for its purpose a repeal of another general statute, effect, if possible, should be given to all of the statutes, and in case of conflict the last expression of legislative will must govern.
"In determining what the last expression of legislative will was as to the acts in question, it is obvious that the act numbers will not control, nor do we believe that the time of signing by the Governor controls. Instead, it is our view that the last expression of legislative will means the last action of the legislature itself in passing upon the various bills. The only way to be sure of the last action taken by the legislature on any bill would be to examine the journals and this would be a difficult and tedious undertaking at this time. Inasmuch as it is presumed that the legislature promptly forwarded to the Governor as soon as possible bills which had been passed by the legislature, we have adopted, so far as time is concerned, the time these various bills were received by the Governor, and used that time as a guide for the last expression of legislative will, with regard to these acts.
"Using the above as a guide, it appears that all of the special acts referring to special City Courts, adopted by the 1956 Legislature, were passed by the legislature prior to the passage of Acts 257, 326 and 422, the latter being considered as general acts. Acts 257 and 422 specifically provide that they shall not conflict with any special laws, and neither of those acts will, therefore, affect any of the special acts. Act 326 specifically provides that it shall not affect City Courts of Baton Rouge, Alexandria, New Orleans, Monroe, and Shreveport, and therefore, these five municipal courts are not affected by either of these three acts.
"Act 257 was the first general act adopted by the Legislature, Act 326 was the second and Act 422 was the third, in point of time.
"Act 257 purports in its title to amend and reenact Section 1870 of Title 13 of the Revised Statutes of 1950, relative to the salary of a marshal of a City Court. The whole of Section 1870 was rewritten into Act 257 in the exact words of R.S. 13:1870, prior to the amendment, with the following exceptions: The salary of the City Judge is fixed at $2,000, ½ each to be paid by the City and Parish and with the authority for an increase of $1,000, to be paid ½ each by the parish and city; and the salary of the marshal, where the ward contains cities of more than 10,000 inhabitants, is fixed at $3,000, to be paid ½ by the city and ½ by the parish; whereas in the original Section 1870, before this amendment, the salary of the Judge in such wards was fixed at $3,000, and of the marshal at $2,000. The title of Act 257 indicates that its sole purpose was to provide for a change relative to the salary of a marshal, and it may well be that from a constitutional *63 standpoint, the only effective change made by Act 257 was the portion dealing with the salary of the marshal. However, it is unnecessary to consider such constitutional question, for the reason that the entire subject of salaries for judges and marshals was provided for in Act 326, which was the later expression of legislative will, as about pointed out, for which reason it is our opinion that Act 257 should be entirely disregarded in determining the present law dealing with such salaries.
"Act 326 must then be considered in connection with Act 422 to determine what effect, if any, Act 422, the latest expression of legislative will, had upon Act 326, and we will consider first Act 422.
"The title of Act 422 purports `to amend and reenact Section 1870 of Title 13 of the Louisiana Revised Statutes of 1950, to increase the salary of the marshal from $2,000 to $3,600 per annum.' (Emphasis supplied.) Act 422 uses verbatim the language as contained in R.S. 13:1870, prior to any amendments to this section made by the 1956 legislature, with the exception of that portion of Section 1870 dealing with the salary of the marshal, and with the exception that each of the sub-paragraphs contains letters for identification, whereas the former act omitted any identifying marks for the sub-paragraphs. Act 326 fixed the salary of the marshal by providing that he shall receive in civil matters the some compensation as received by constables, but made no provision for any additional salary where the population of the ward is more than 10,000 inhabitants. Act 422, being the latest expression of legislative will, must therefore prevail over any other act in the 1956 legislature, which means that the marshal's salary shall be paid by the police jury and the governing body of the city monthly on his own warrant and the governing body of the city shall fix the amount of the salary to be paid monthly by it to the marshal, but in wards containing cities of more than 10,000 inhabitants, the marshal shall receive a minimum salary of $3,600 per annum, ½ paid by the city and ½ paid by the parish, payable monthly on his own warrant.
"By adopting the rule of construction mentioned in the first portion of this opinion, and in order to determine legislative intent, it is our opinion that all of the portions of Act 422, except the portion dealing with the office of marshal, should be disregarded for the reason that Act 326 clearly appears fully to cover all phases of the Courts other than those specifically excepted from its provisions, as above pointed out.
"From the above, it is our view than Act 326 is the present law dealing with City Courts throughout the state, except for the City Courts of Baton Rouge, Alexandria, New Orleans, Monroe and Shreveport, and except for the provisions of Act 422 dealing with the office of marshal and providing for an increase in salary for that office.
"Act 326, which was considered by the legislature prior to Act 422, as above pointed out, is not applicable to the City Courts of Baton Rouge, Monroe, Alexandria, New Orleans or Shreveport, but it is clearly applicable to every other City Court in the State, as reflected in Section 1 of the act, and the repealing clause, which is Section 15, provides that all laws or parts of laws, general or special, in conflict with the provisions of this act, are repealed. There is, therefore, a manifest intent of the legislature in the adoption of Act 326 to repeal all general or special laws in conflict with Act 326, except the five City Courts above specifically named, for which *64 reason there is apparently no need for further consideration of Act 257, which was prior in point of time of adoption to Act 326, even as applied to the increase in salary of the marshal as provided by Act 257. Act 326 omitted the increase in salary provision for marshals as contained in Act 257, and under the provisions of Act 326, it is provided that the marshal shall receive in civil matters the same compensation as is received by constables.
"In one of the requests for an opinion dealing with city courts, one of the points presented to us for consideration in connection with City Courts had to do with the determination of the population of a given city or ward.
"[LSA-]R.S. 1:11 reads as follows: `Except as otherwise provided, the number of inhabitants of a political subdivision is that shown by the latest regular or special Federal Census.'
"[LSA-]R.S. 33:341 places municipal corporations into three classes; namely, cities, towns and villages and those having 5,000 inhabitants or more are cities, those having less than 5,000 and 1,000 or more are towns, and those having less than 1,000 and 150 or more, villages. R.S. 33:342, as amended by Act 46 of 1954, in part permits a change in classification of a municipality so as to provide for the increase or decrease of population which would affect the class to which it theretofore belonged, and in determining the population, municipalities may employ a person to take the census or may use the certified report from the United States Bureau of the Census. It is apparent that unless the classification is to be changed from a city, town or village, there is no authority for the employing of a person to take a census, which means that the population is determined by [LSA-] R.S. 1:11 for purposes other than a change in one of the three classifications. We know of nothing in the law, therefore, that will allow any city or the portion of a ward within a city court to take a census for the sole purpose of applying the provisions of the law dealing with City Courts, which means that irrespective of the present population, the federal census, or census which is taken for classifying purposes only must apply.
"The above is intended as a general guide for interpretation of this rather perplexing problem, and if the situation warrants, any separate problems dealing with any particular Court can be handled separately.
 Sincerely yours,
 "Jack P. F. Gremillion
 "Attorney General"
"Honorable J. Y. Gilmore "Judge "City Court of Morgan City "Morgan City, Louisiana
 July 23, 1956
"Dear Judge Gilmore:
"Reference is made to your letter dated July 19, 1956.
"Because of the adoption of Act 326 of 1956 and Act 247 of 1956, and apparent conflicts between certain special acts dealing with the City Court of Morgan City with Act 326 of 1956, you request clarification by this office.
"At the outset, it will be necessary to determine whether Act 326 is a general law which supersedes or repeals an earlier special law. At this point it may be well to state that Section 14 of Act 326 provides that the act shall not apply to the City Courts of Baton Rouge, Monroe, Alexandria, New Orleans or Shreveport, for which reason anything that is stated herein will not be applicable to the city courts above named, which are excluded from the *65 provisions of the act; moreover, in Section 1 of Act 326 there is an exception as regards the beginning and expiration of terms of office as applied to New Orleans and Eunice, and also a specific provision that Section 1, dealing with the abolishing of the office of Justice of the Peace, is not applicable to the City of Gretna, and we see no need, therefore, to consider the law with regard to the Gretna and Eunice courts until such time as some specific request is made concerning the courts of those cities.
"Section 1 of Act 326 in part provides for the election of city judges for city courts, whether presently in existence or hereafter created, and provides for the time of election, beginning of terms and expiration of terms of office.
"Section 15 of Act 326 provides that all laws or parts of laws, general or special, in conflict with the provisions of this act are repealed. The language used in the repealing clause indicates clearly that Act 326 shows a manifest legislative intent to repeal any prior, general or special statute in conflict with the act, and therefore since the special act dealing with Morgan City is not excluded, this special act must yield to any conflicting provisions of Act 326 with the following exceptions.
"It is the general rule that if a special statute is enacted for a particular case, it is not presumed that the legislature intended to repeal or amend such a special statute by the subsequent enactment of a general statute on the same subject; also, as above stated, the general rule is that a general statute does not repeal a special statute unless the purpose so to do is clearly manifest. (See City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309; 25 R.C.L., Par. 177, p. 928; 50 Am.Jur., p. 565, Secs. 564 and 565).
"We are fortified in our view that it was clearly the manifest intent of the legislature to repeal prior general and special acts conflicting with Act 326, for the reason that certain specific city courts were named as not applicable to the provisions of the act.
"It is noted that Act 247 of 1956 (amending and reenacting R.S. 13:2338), dealing with fees and salary of the judge of the city court of Morgan City, and dealing with other matters in connection with that court, was approved by the Governor July 8, 1956. Act 326 was approved by the Governor on July 10, 1956, and in point of time, it would appear that the legislature adopted Act 326 and transmitted the act to the Governor subsequent to the enactment and forwarding to the Governor of Act 247. Generally speaking, if two acts of the legislature are adopted at the same session, the last expression of legislative will is what governs in case of conflict. It does not appear reasonable, however, that the legislature would have intended to nullify the provisions of Act 247, dealing with a general situation such as the Morgan City City Court, by the adoption of the general law a few days later. Until such time as the courts hold otherwise, we are constrained to hold that the general principles of law hereinabove referred to, dealing with the last expression of legislative will, are not applicable to the above two acts in question. This means that all of the provisions of Act 326 in conflict with the special law or laws dealing with the City Court of Morgan City, repeals these special laws, with the exception of Act 247 of 1956, which is to be presumed as valid under the doctrine of legislative intent. In other words, comparison must be made with the specific law dealing with the City Court of Morgan City with Act 326 of 1956, and wherever there is a conflict, Act 326 *66 must prevail, with the exception of the provisions of Act 247 of 1956.
 "Sincerely yours,
 "Jack P. F. Gremillion,
 "Attorney General."
While we realize that the opinions from our attorney generals do not have the force of law, yet they have been consistently recognized as being entitled to great weight. The late Justice LeBlanc in the case of State ex rel. Sanchez v. Dixon, La. App., 4 So.2d 591, 600 stated:
"It is stated in the majority opinion that whilst the interpretations placed on these acts by the office of the Attorney General should be accorded great weight, the final duty and responsibility for interpreting and construing laws rests upon the courts. It is true that such opinions are not binding as authority on the courts, but when there is such a unanimity of agreement as is found to be the case in the opinions handed down on the questions with which we are here concerned, I must say that they have very strong persuasive force and they should not be lightly overruled by the courts. The men who occupy the office of Attorney General are men who are learned in the law and are elected by the people of the State at large to be at the head of the Department of Justice of the State, and certainly their opinions are entitled to the greatest respect. * * *
We agree with the holding of the trial court that Act 422 of 1956 does not supersede Act 326 of 1956.
The next contention raised by respondents and shown by their answer in which they admit that relator was elected and sworn as city judge of this city of Thibodaux and Second Ward of the Parish of Lefourche and is presently purporting to act in said capacity, was that the election called for the purpose of electing a city judge did not comply with Article 7, Section 51 of the Constitution as amended and LSA-R.S. 13:1872 and is, therefore, not a properly constituted court under the provisions of the Constitution and the law of the State of Louisiana. In order that respondents' position under this contention might be more clearly understood we quote from his brief on this question:
"Right to Question the Constitutionality of the Office of City Judge and the Title of Archie D. Saint to Said Office
"In Paragraph 1 of Appellee's petition, he alleged that he is the duly elected and sworn City Judge of the City of Thibodaux and the Second Ward of the Parish of Lafourche, Louisiana. Appellant in answering said allegation took the position that the office of City Judge for the City of Thibodaux and Ward 2 of the Parish of Lafourche, Louisiana, was not properly created and that Archie D. Saint, appellee, was not elected to said office as provided for by law. An exception of no cause of action was also filed by Appellant questioning the constitutionality of the office of City Judge and the right of Appellee to act in the capacity of City Judge for the City of Thibodaux and Ward 2 of the Parish of Lafourche, Louisiana. The trial judge in over-ruling our exception of no cause of action and also rendering judgment on the merits held that the office of city judge and the constitutionality thereof cannot be attacked in a mandamus proceeding (Page 10 of the opinion). The cases cited by Appellee in his brief and relied upon by the District Judge in his opinion are the cases of Blessing v. Levy, 214 La. 856, 30 So.2d 84; State ex rel. Vienne v. Hyams, 12 La.Ann. 719; State ex rel. Sternberg v. Lagarde, 21 La.Ann. 18; State ex rel. Hero v. Pitot, 21 La.Ann. 336, 338; State ex rel. Williams v. Pertsdorf, 33 La.Ann. 1411; State ex rel. Jumel v. Johnson, 29 La.Ann. 399.

*67 "In most of these cases, the relator was seeking the possession of an office which he claimed was then being possessed by some one else. The very purpose of the mandamus proceeding was to try the title to an office. I think the Court properly held that mandamus was not the proper proceeding. The relator had control of his pleadings and he should have used the proper procedure to have his rights to the office determined.
"In our case, the relator, claiming to be the duly elected City Judge of the City of Thibodaux and the Second Ward of the Parish of Lafourche, Louisiana, filed a mandamus proceeding to compel the City of Thibodaux to give him an increase in salary as provided for by Act 326 of 1956. The City of Thibodaux, as respondents, had to either admit or deny the fact that relator was the duly elected judge. The respondents denied this allegation because it felt that the City Court for the City of Thibodaux and the Second Ward of the Parish of Lafourche was improperly created and the election called for the purpose of electing a city judge to said court was improperly held. I do not believe that this Honorable Court can hold that a petitioner by choosing to file a mandamus proceeding can prevent the respondents from raising a valid defense to his claim even though that defense necessarily questions the constitutionality of the office concerned or the right of the petitioner to said office. To hold otherwise, the Court would have to assume for the purpose of this trial the validity of petitioner's claim to the office and the constitutionality of said office. In the case of [State ex rel.] Nunez v. Baynard [La.App.], (15 So.2d 649). The Court had for its consideration a mandamus proceeding to compel the state auditor and state treasurer to pay relators their salary as Assistant District Attorney for the Parish of Plaquemine and St. Bernard. As a defense to their cause of action, the respondents alleged that the act creating the office of Assistant District Attorney for the Parish of St. Bernard and Plaquemine was invalid. This was a direct defense to their right to the office and also the constitutionality of the office which they claimed. The Court in that case held that it was proper to pass on the question of constitutionality of their office because that question must necessarily be determined before they could decide whether the relators were entitled to the salaries which they claimed. In our case it is also necessary that the constitutionality of the office which relator claims be determined before the Court can decide whether or not he is entitled to the increase in salary which he claims.
"As further authority to substantiate our position that the question of the constitutionality of the office of the city judge for the City of Thibodaux and Ward 2 of the Parish of Lafourche, Louisiana, can be passed on in a mandamus proceeding we submit for the Court's consideration the case of State ex rel. Williams v. Pertsdorf, 33 La. Ann. 1411. This case was cited by appellee in the brief which he submitted to the trial court to substantiate his position that mandamus cannot be used to question the title to an office. This case distinguishes between an action to try the title to an office and an action to have an office declared unconstitutional. In this case the Court held that the relator in a habeas corpus proceeding can question the existence and competency of a court. Since we have taken the position that the City Court for the City of Thibodaux and Ward 2 of Lafourche Parish was improperly created we can have that issue determined in this proceeding. [LSA-] R.S. 42:76 provides that when any person unlawfully holds any public office, `an action shall be brought by the *68 attorney general or the District Attorney of the Parish of which the case arises * * *'. This action is entitled `Actions to try right to office.' This statute pre-supposes the existence of a legally constituted office. As hereinafter shown, the office of city judge for the City of Thibodaux was never properly constituted and never came into existence.
"It is our position that in order to determine whether or not appellee is entitled to the relief which he asks that the Court must first decide whether or not the City Court was properly created, second, if relator was duly elected to this office if it was properly created and third, if this Court was properly created and relator was duly elected to this office whether or not he is entitled to the raise in pay which he requested. The Court cannot properly decide the third question without deciding the first two questions. I do not believe that the Court would want to place itself in the position of ordering the City of Thibodaux to pay a salary for an office which does not exist and to which the appellee is not entitled."
The District Court considered this contention as being one which questioned the title of the plaintiff to the office of City Judge and answered it in his written reasons; as follows:
"In their answer, respondents attack the office of the City Judge, citing Article 7, Section 51 of the Louisiana Constitution that city judges shall be elected at the election for representatives. In brief, the relator contends that mandamus is not the proper action to test the right of a public office, and that respondents have a remedy at law to so test the legality of the office of the City Judge, citing in support, [LSA-] R.S. 42:76; [LSA-] R.S. 18:1301, and State ex rel. Jumel, v. Johnson, 29 La.Ann. 399. [LSA-] R.S. 42:76 provides that when any person unlawfully holds any public office, an action shall be brought by the Attorney General or the District Attorney and shall be filed in the District Court of the Parish. [LSA-] R.S. 18:1301 provides that:
"`In any case in which a person claims to have been appointed to the office of judge of any court and is confirmed by the senate and commissioned, or claims to have been elected, and in pursuance of the election commissioned, the commission is prime facie proof of his right to hold and exercise the office immediately.'
"In the case of Blessing v. Levy, 214 La. 856, 39 So.2d 84, at page 87, the Supreme Court held:
"`Applying this rule to the instant case, it will be at once seen that appellee made out a prima facie case when he offered in evidence his commission signed by the Governor, which was issued as a result of his election by the people on November 2nd 1948. Since we have found that Act No. 513 of 1848, amending Section 96 of Article VII of the Constitution, did not extend appellant's term of office and thus nullify appellee's election and the commission issued to him by the Governor, it follows that the legality of the election and the commission cannot be seriously disputed. * * *'
"The relator has introduced in evidence the Governor's proclamation declaring the office of City Judge vacant and calling an election to fill the vacancy, the promulgation of the Democratic Executive Committee, the proclamation of the Governor declaring relator to be City Judge, the commission from the Governor, and the oath of office taken by relator.
"In State ex rel. Jumel v. Johnson, 29 La.Ann. 399, at page 401, the Supreme Court held that:
"`This presents distinctly the issue of the rightful title to an office, an issue *69 which cannot be tried in this form of proceeding. A mandamus will not issue to test the right to an office. That doctrine is coeval with the origin of the writ, and has often been applied by this court. State ex rel. Vienne v. Hyams, 12 La.Ann. 719; State ex rel. Sternberg v. Lagarde, 21 La.Ann. 18; Hero's case, [State ex rel. Hero v. Pitot, 21 La.Ann.] 336. In Sternberg's case, where he alleged title to the office of sheriff and applied for the writ to compel his predecessor to deliver to him the room, keys, papers, records, etc., belonging to it, our immediate predecessors held that it was not the office that was in dispute, the right to which could not be inquired into under an application for a mandamus, but it was the room, books, papers, etc., belonging to that office, and the court made the writ peremptory. And this ruling is founded upon the express provision of our Code which permits mandamus to issue to a public officer to compel him to deliver to his successor the papers and other effects belonging to his office. Code of Practice, Art. 833.'
"`When the respondent, in his answer to the rule, presents an issue that is foreign to the use for which the writ may be invoked, he can no more be heard than a relator who shall seek to test the title to an office under the guise of a proceeding, the ostensible object of which is to obtain possession of the books and insignia of the office * * *.'
"In view of the statutes and jurisprudence above quoted, it is the opinion of this Court that relator's right to hold the office of City Judge and the constitutionality thereof cannot be attacked in these proceedings."
There is no doubt but that plaintiff protected his rights by a timely objection to any claimants attack on his title or right to his office and if that is, in fact, the real contention of plaintiff then the District Court has properly disposed of it. Counsel for respondents in his brief as above quoted attempts to differentiate the cases relied upon by the trial court as authority for his holding that the right or title to an office cannot be tried in a mandamus proceeding by stating that in the cited cases the relator was seeking the position of an office which he claimed was then being possessed by someone else, whereas in the present case he says the relator had control of his pleadings and he should have used the proper procedure to have his rights to his office determined. Relator is not seeking to challenge his own right to the office and if the respondents wished to challenge his right to the office they should have proceeded under LSA-R.S. 42:71 et seq.
Counsel for respondents further cites the case of Nunez v. Baynard, supra, in which he says: "The Court in that case held that it was proper to pass on the question of constitutionality of their office because that question must necessarily be determined before they could decide whether the relators were entitled to the salaries which they claimed. In our case it is also necessary that the constitutionality of the office which relator claims be determined before the court can decided whether or not he is entitled to the increase in salary which he claims." In the Baynard case the respondent defended the suit for a salary on the ground that Act 8 of 1936 [LSA-R.S. 16:572 et seq.], which purported to create the offices of assistant district attorneys was unconstitutional and therefore the office which they claim to hold did not exist.
In the present case respondents do not plead the unconstitutionality of the laws creating the office of City Judge of Thibodaux but contend that the office was not created in accordance with such law. We believe that if respondent's defense goes to the very existence of the office of city judge in this case, that is, that if his contention is correct that the office does not *70 exist that he would have a right to urge it, but as to his contention that he is entitled to attack the right of the relator to the office, we consider that as an attack on relator's title and this he cannot do in these proceedings for the reasons given by the trial judge and affirmed by us above. Without directly passing upon whether counsel for respondents' contention is definitely an attack on relator's title to the office, we will consider it.
Counsel for respondents argues that as Article 7, Section 51 of the Louisiana Constitution gives the Legislature the power to abolish justice of the peace courts in wards embracing the parish seat or claiming cities of more than 5000 inhabitants and to create in their stead courts with such civil jurisdiction as is now vested in justice of the peace courts, and that the judges of said courts, the city of Baton Rouge, excepted, shall be elected for terms of six years, and that the judges of the city courts now in office, Baton Rouge excepted, shall remain in office until the 31st day of December, 1954 and every six years thereafter the said judges shall be elected at the election for representatives in Congress, and that as LSA-R.S. 13:1872 provides that the judges of the City Courts, New Orleans and Baton Rouge excepted, "whether these courts are presently in existence or may hereafter be created, shall be elected in the congressional election for representatives beginning with those city judges elected in the Congressional election of 1936," and, therefore, in view of the fact that the office of city judge for the City of Thibodaux and Ward 2 of the Parish of Lafourche was purportedly created by the appointment of Edward Diaz as city judge by Governor Robt. F. Kennon on Dec. 30, 1954, and approximately a month thereafter the Governor declared this office vacant and called for an election for City judge of Thibodaux and Ward 2 which was held on Feb. 8, 1954, and that the relator was elected at that time which was not a congressional election, that, therefore, the office was never legally created. Counsel, under the above cited authorities and his interpretation thereof, in his brief states: "The office of city judge for the City of Thibodaux and Ward 2 of the Parish of Lafourche, Louisiana, could not be created by any other means than by an election properly held at the time of the election of representatives for Congress held either November 2, 1954 or November 6, 1956." He then relies upon the case of State ex rel. Sanchez v. Dixon, supra, which he considered to be on all fours with and as sustaining his contention that the office of City judge never came into existence.
In the first place the Dixon case was brought by the District Attorney of East Baton Rouge parish squarely under the provisions of LSA-R.S. 42:76 to test the right to office. Such is not the case under consideration, where as the Dixon case, involved the legality of the appointment of four Police Jurors under Section 1 of Act 12 of the Extra Session of 1940, LSA-R.S. 33:1221 et seq., which provided:
"Section 1. Be it enacted by the Legislature of Louisiana, That at the general State election to be held in April, 1940, and at each general State election thereafter, there shall be elected as many police jurors for each ward of each parish in this State, by the qualified voters of said wards, as provided by law, the Parish of Orleans excepted.
"Section 2. For each parish ward, there shall be elected, in the manner provided by law, in addition to the police juror to which the ward is entitled, one additional police juror for each ten thousand (10,000) inhabitants which the said ward contains, said apportionment to be based upon the last preceding United States census; also one additional police juror for each additional ten thousand (10,000) inhabitants, or part thereof in excess of seven thousand five hundred (7,500), to be selected from the resident voters of the ward. Provided that this section shall not apply to parishes having *71 a population of less than 50,000 inhabitants.
The appointment of the Police Jurors in question having been made on May 20, 1941 or approximately three years prior to the time of the next general state election, whereas in the present case the appointment of Diaz was made subsequent to the time that the people of the City of Thibodaux and Ward 2 were entitled to have had the proper authority call an election for the office to be held at the congressional election in November 1954. In other words, under the facts in the present case, in April of 1954 the City of Thibodaux became entitled by virtue of fulfilling the requirements of the law as to the number of inhabitants, to have a city judge elected at the next Congressional election.
We realize that the opinion of the court in the Dixon case held that police jury offices did not come into existence when the conditions of the law were fully met as to population but could only be created, so to speak, by an election of Police Jurors at the next General State election which was three years in the future, We note, however, that the other member of the majority concurred in the decree only, Judge Dore feeling that the statute there in question only related to the number of police jurors to be elected at the next general election and did not create, increase, or decrease any offices. We further note the strong and logical dissent of Judge LeBlanc, and the authorities cited in support thereof. There was no application for rehearing or for writs in said Dixon case.
We believe that the office of city judge was created when the conditions of LSA-R.S. 13:1870 were met, namely that the city and wards of the specified populations elected a judge of the requisite qualifications. It is not disputed that the appropriate authority could have called an election for city judge to fill the six-year term beginning January 1, 1955, since the conditions of population existed at the time of the general election of 1954, and since Article 7, Section 51, of the Constitution provided for six-year terms of all city judges (except New Orleans and Baton Rouge) commencing January 1, 1955.
We cannot agree with the argument that the people of Thibodaux should be deprived of the services of a city judge until December of 1960, or until an intervening Congressional election, because the appropriate authority neglected to call an election to fill the office in 1954, and we feel that the then Governor properly called an election to fill the remaining term of City Judge (5 years and almost 11 months) on February 8, 1955, under the provisions of LSA-R.S. 42:373, which controls when there is a vacancy in a statutory office made elective by the people and where the unexpired term is for a longer period than one year, Chappuis v. Reggie, 222 La. 35, 62 So.2d 92.
Counsel next argues that assuming that the office of city judge was properly created, that relator was duly elected to said office, and that Act 326 of 1956 regulates the salary to be received by him, all of which we have held to be true, that this Honorable Court cannot award him the salary which he demands of $4800.00 because "The sole basis to determine whether or not a city court can come into existence is the population of the city itself and not the wards in which said city is located. The law is very specific in stating that it is in wards containing a city of more than 5,000 inhabitants and not in wards containing over 5,000 inhabitants that city court can be created," and he further argues that the basis to determine the salary of a city judge under R.S. 13:1870 was the population of the city and not that of the wards in which the city was situated, and at the time of the creation of the City Court of Thibodaux and Ward 2 of Lafourche Parish, La., the population of the City of Thibodaux would have determined the salary to be received by relator, and that as this population in 1950 was 7733, the relator was entitled to the salary received by the Justice of the Peace. He *72 further argues that under Act 326 of 1956 relator was the judge of a city and/or judge of a ward of less then 10,000 population and would only be entitled to a salary of $300.000 under this provision and would also have to serve without the services of a city clerk. Counsel finally states in his brief that if this court should find that the salary to be received by relator is regulated by Act 326 of 1956, it is their position that his salary is to be fixed at $300.00 per year, and to serve without the services of a clerk.
This contention has been ably and fully answered by the lower court in its written reasons for judgment as follows:
"It will be noted that, as stated above, Section 4 of Act 326 of 1956 places the salary of Judge Saint at Four Thousand, Eight Hundred and no/100 ($4,800.00) Dollars, if his salary scale is based on a population of between ten and twenty thousand people. Section 7, of course, gives him a clerk of court and such deputy clerks as he might need, if his salary is scaled at Four Thousand, Eight Hundred and no/100 ($4,800.00) Dollars per year. LRS 1:11 distinctly and clearly points out that to determine such population we must look to the last federal census. The last federal census in Lafourche Parish is dated 1950 and it is in the record. The population of Ward 1 is two thousand, two hundred sixty-one (2,261); Ward 2 is nine thousand, four hundred thirty-two (9,432); Ward 5 is two thousand, four hundred twenty-nine (2,429). The phraseology of Section 4 of Act 326 of 1956 `* * * a city judge serving in a ward or wards wherein the population is * * *' undoubtedly was used for the purpose of taking care of situations where a city court might have jurisdiction in more than one ward, such as is true in the city court of Thibodaux. Prior to 1950, the City of Thibodaux, though largely located within the confines of Ward 2, did extend into Wards land 5. By proper police jury ordinances (774 and 759) (see testimony of Mr. Gus Zimmerman, Page 7) the limits of Ward 2 were extended to include all of those portions of Wards 1 and 5 located within the Thibodaux city limits. The census of 1950 setting out the population of Ward 2 did not concern itself with city limits, but only with ward limits.
"According to Mr. Zimmerman (see page 9 of the testimony) the city limits of Thibodaux in 1956 again had lapped over and into Ward 1 and Ward 5, and on May 9, 1956 the Lafourche Parish police jury of which Mr. Zimmerman is Secretary, extended the boundaries of Ward 2 of the Parish of Lafourche to cover an additional part of Ward No. 1, then presently within the corporate limits of the City of Thibodaux.
"Mr. Nelson Zernott, custodian of ordinances and maps of the City of Thibodaux, testified that by City Ordinance No. 480 dated April 27, 1954, the city limits of Thibodaux expanded into North Thibodaux, including a part of Ward 5 (see testimony page 18) and that as of December 29, 1954 the City of Thibodaux also included part of Ward 1 over in the Ridgefield area.
"This Court believes, therefore, that in view of the fact that the city limits of Thibodaux have been extended to include at least portions of three wards1, 2 and 5in the Parish of Lafourche, that the population of these three wards is the proper basis upon which to determine the salaries, duties and obligations under Act 326 of 1956. This being true, the 1950 census, a copy of which is found in the record, giving the population of Lafourche Parish in Wards 1, 2 and 5 (above recited) places the population in these three wards at 14,122."
For the above and foregoing reasons the judgment of the district court is hereby affirmed.